

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-26-2005

# Jordan v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-2055

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Jordan v. Atty Gen USA" (2005). *2005 Decisions.* Paper 462.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/462

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 03-2055

————

MARK ANTHONY HERBERT JORDON

v.

ATTORNEY GENERAL OF THE UNITED STATES,[*]

Appellant

————

Initially docketed as an Appeal from the
United States District Court
for the Middle District of Pennsylvania
(D.C. No. 01-cv-01732)
District Judge:  Honorable Yvette Kane
Converted to a Petition for Review from the
Board of Immigration Appeals
Pursuant to the Real ID Act of 2005
(A 24 003 878)

————

[*]Because we have converted the present case into a petition
for direct review, we are required to substitute the Attorney General
for the current respondent (Bureau of Immigration and Customs
Enforcement).  8 U.S.C. § 1252(b)(3)(A).

Argued May 9, 2005
Before: SLOVITER and FISHER, *Circuit Judges*,
and POLLAK,[**] *District Judge*.

(Filed: September 26, 2005)

Linda S. Wernery
John M. McAdams, Jr. (Argued)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
        *Attorneys for Appellant*

Daniel I. Siegel
Ronald A. Krauss (Argued)
Office of Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
        *Attorneys for Appellee*

---

OPINION OF THE COURT

---

FISHER, *Circuit Judge*.

---

[**]The Honorable Louis H. Pollak, United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

Appellee Mark Anthony Herbert Jordon filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania challenging a final order to remove him on grounds that he is a non-removable, derivative United States citizen under the since-repealed 8 U.S.C. § 1432(a). The District Court granted Jordon's petition. Under the recently enacted REAL ID Act, we will vacate the District Court's decision, convert Jordon's habeas petition into a petition for review, and deny that petition for review because Jordon cannot establish a required element of derivative United States citizenship under § 1432(a).

I.

Facts and Procedural History

Jordon was born in London, England, on May 7, 1970. Jordon's parents, Celeste and Herbert Jordon, were married at the time of his birth. In 1975, Jordon and his family moved to Jamaica. Shortly thereafter in 1975, Jordon's mother and sister moved to New York, New York, but Jordon stayed in Jamaica with his father. On March 15, 1979, Jordon came to the United States to live with his mother in New York. In 1980, Jordon adjusted his immigration status to that of lawful permanent resident.

On March 13, 1985, when Jordon was fourteen years old, his mother became a naturalized United States citizen. At some point in 1988, Jordon's father moved to New York to live with his wife and children. On May 7, 1988, Jordon turned eighteen years old. In 1989, Jordon's mother began divorce proceedings in New York state court. The divorce court ultimately found that Jordon's father had abandoned Jordon's mother at some time prior to June 30, 1988, but

3

did not specify a precise date of abandonment. In 1991, the divorce became final and Jordon's father returned to Jamaica.

On March 11, 1991, Jordon was convicted in the Supreme Court of New York, Kings County, for criminal possession of a loaded pistol and received a one-year prison sentence. As a result of Jordon's conviction, an immigration judge found that he was deportable under 8 U.S.C. § 1231(a)(2)(C) and entered an order of deportation *in absentia* on August 16, 1994. Jordon filed a motion to reopen the order on April 24, 1997, asserting that he had not received notice of his deportation hearing. The Board of Immigration Appeals (BIA) denied the motion on May 22, 1997. On June 22, 1997, Jordon was deported to England.

In December 1999, Jordon returned to the United States and was admitted under the Visa Waiver Program.[1] On December 21,

---

[1]The Visa Waiver Program permits visitors from certain countries (including England) to enter the United States without a visa if they satisfy certain requirements, including, for example, that they do not "represent a threat to the welfare, health, safety, or security of the United States[,]" 8 U.S.C. § 1187(a)(6), and are "in possession of a round-trip transportation ticket." *Id.* at § 1187(a)(8). In exchange for admission under the Program, the alien is statutorily required to execute a waiver of his rights "to review or appeal ... an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States, or to contest, other than on the basis of an application for asylum, any action for removal of the alien." *Id.* at § 1187(b); *Itaeva v. INS*, 314 F.3d 1238, 1239 (10th Cir. 2003).

In his post-argument submission to the Court at the Court's request, Jordon's counsel denies that Jordon was readmitted under the

1999, in connection with his readmission under the Visa Waiver Program, Jordon executed a Nonimmigrant Visa Waiver Arrival / Departure Form (Form I-94W). On the Form I-94W, Jordon checked "No" next to the question asking whether he had "ever been arrested or convicted for an offense or crime involving moral turpitude or a violation related to a controlled substance; or been arrested or convicted for two or more offenses for which the aggregate sentence to confinement was five years or more; or been a controlled substance trafficker; or are you seeking entry to engage in criminal or immoral activities." The Form I-94W Jordon executed includes a "Waiver of Rights" provision which states that "I hereby waive any rights to review or appeal of an immigration officer's determination as to my admissibility, or to contest, other than on the basis of an application for asylum, any action in deportation." The Form also includes a

---

Visa Waiver Program, stating specifically that:

> Counsel knows of no documentation in the record that Mr. Jordon was readmitted through the Visa Waiver Program, and, specifically, no documentation that he executed the waiver required under 8 U.S.C. § 1187(b). Further, Mr. Jordon has no recollection of executing such a waiver, nor does he have any recollection that he was readmitted through the Visa Waiver Program. Thus, Mr. Jordon would deny both that he was readmitted through the Visa Waiver Program and that he executed a § 1187(b) waiver.

But, as discussed below, the supplemental declaration of Ms. Richardson includes, as attachments, copies of official documentation which appear indisputably to establish that Jordon did, in fact, reenter the United States in 1999 under the Visa Waiver Program, and we will credit the authenticity of that documentation.

"Certification" provision stating that "I certify that I have read and understand all the questions and statements on this form. The answers I have furnished are true and correct to the best of my knowledge and belief." Jordon signed his name and entered the date "12/21/99" immediately below the "Waiver of Rights" and "Certification" provisions.

Apparently on the same day he executed the Form I-94W, Jordon was arrested and charged with illegal reentry under 8 U.S.C. §§ 1326(a) and 1326(b)(2).[2] On May 16, 2000, he pleaded guilty to a one-count information charging illegal reentry under 8 U.S.C. §§ 1326(a) and 1326(b)(2) and was later sentenced to a prison term of 57 months. He served his prison term at LSCI-Allenwood, Pennsylvania, a facility operated by the Federal Bureau of Prisons.

On October 18, 2000, the Immigration and Naturalization Service (INS)[3] filed an immigration detainer notice with the Bureau of Prisons.[4] On December 13, 2000, the INS issued several

---

[2]The record is unclear as to the precise dates of Jordon's readmission and subsequent arrest, but the precise dates are immaterial for our purposes.

[3]As a result of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), the INS has ceased to exist as an agency within the United States Department of Justice. Its enforcement functions now reside in the Bureau of Immigration and Customs Enforcement (BICE) within the Department of Homeland Security. *See also Vente v. Gonzales*, 415 F.3d 296, 299 n.1 (3d Cir. 2005).

[4]This detainer notice indicated that an "[i]nvestigation has been initiated to determine whether this person [Jordon] is subject to

documents relating to Jordon and his impending deportation as a result of his illegal reentry conviction. First, it issued a "Notice of Intent to Remove for Violating the Terms of Your Admission Under Section 217 of the Immigration and Nationality Act," which stated that INS had found that Jordon had reentered the United States under the Visa Waiver Program, executed a waiver in connection with his reentry of his right "to contest deportability before an Immigration Judge and the Board of Immigration Appeals, and to any judicial review of any and all of the above decisions: except for the filing of an application for political asylum[,]" and violated the terms of his readmission under the Visa Waiver Program by virtue of his illegal reentry conviction under 8 U.S.C. § 1326(a) and (b)(2).

The "Notice of Intent to Remove" also informed Jordon that the INS had entered an order to deport him from the United States. This order, also issued on December 13, 2000 and denominated "Order of Deportation, Section 217 and 241," stated that Jordon was not a United States citizen or national, was admitted under the Visa Waiver Program, and had violated the conditions of his admission under the Program by illegally reentering the United States under §§ 1326(a) and (b)(2). It also informed Jordon that he had executed the waiver set forth in the "Notice of Intent to Remove," and ordered that he be deported.

On September 5, 2001, while still serving his prison term for illegal reentry, Jordon filed a petition for writ of habeas corpus under

removal from the United States." The notice stated that it was "for notification purposes only" and that it did not limit the Allenwood facility's discretion with respect to any decision affecting Jordon. The notice also directed the Allenwood facility to notify the INS at least 30 days prior to Jordon's release or in the event of his death or transfer.

28 U.S.C. § 2241[5] in the United States District Court for the Middle District of Pennsylvania challenging his impending deportation. Jordon argued, *inter alia*, that he was not removable because he was a derivative United States citizen under 8 U.S.C. § 1432(a) as a result of his mother's naturalization as a United States citizen. The magistrate judge recommended granting the petition and, on February 12, 2003, the District Court followed that recommendation, granted the petition and directed Jordon's immediate release from INS's "custody."[6] The District Court found, among other things, that

---

[5]The habeas statute provides, in pertinent part, that "[t]he writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody under or by color of the authority of the United States; or .... in violation of the Constitution or laws or treaties of the United States ...." 28 U.S.C. § 2241(c).

[6]At the time the District Court granted his petition, Jordon was still in the physical custody of the Bureau of Prisons at the Allenwood facility, not the physical custody of the INS. Nonetheless, physical detention is not required for a petitioner to meet the "in custody" requirement of § 2241, *see Rumsfeld v. Padilla*, 542 U.S. 426, 124 S. Ct. 2711, 2719 (2004) ("[O]ur understanding of custody has broadened to include restraints short of physical confinement[.]"); *Jones v. Cunningham*, 371 U.S. 236, 239-40 (1963) (noting that custody may be established by restraints on one's liberty other than physical confinement), and there is authority in several of our sister circuits that one subject to a final deportation order issued by the INS or its successor agency is thereby "in custody" for § 2241 purposes. *See Simmonds v. INS*, 326 F.3d 351, 356 (2d Cir. 2003); *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1291 (10th Cir. 2001); *Mustata v. United States Dep't of Justice*, 179 F.3d 1017, 1021 n.4 (6th Cir. 1999); *Nakaranurack v. United States*, 68 F.3d 290, 293 (9th Cir. 1995). Thus, there was at least colorable authority to support the INS's

8

legal separation of one's parents within the meaning of § 1432(a)(3) need not occur prior to the naturalization of the custodial parent. In its view, § 1432(a)(3) requires only that the custodial parent's naturalization occur before the child turns eighteen, regardless of whether the child's parents legally separated before or after such naturalization. Thus, the District Court concluded, Jordon did not need to prove that his parents were legally separated at the time of his mother's naturalization.

BICE[7] filed a timely notice of appeal on April 11, 2003. *See* Fed. R. App. P. 4(a)(1)(B). In May 2003, BICE filed a Fed. R. Civ. P. 60(b) motion, arguing that the District Court lacked subject matter jurisdiction because Jordon was not in immigration custody at the time he filed his petition as required by § 2241. On December 17, 2003, the District Court denied the Rule 60(b) motion.

## II.

### Jurisdiction / Scope and Standard of Review

We begin, as we must, with jurisdiction. This appeal was briefed and argued in the pre-REAL ID Act era, and at that time presented jurisdictional questions regarding exhaustion, the "in

---

"custody" over Jordon at the time he filed his petition. For reasons discussed further below, we need not and do not decide whether a final deportation order issued by INS (or, now, BICE) places one "in custody" of INS (or BICE) for § 2241 purposes.

[7]Although, as noted above, we have substituted the Attorney General of the United States as the appellant in this appeal, we will refer to the appellant herein as BICE for purposes of historical accuracy.

9

custody" habeas requirement under § 2241, and the scope of a district court's habeas jurisdiction over nationality claims such as Jordon's in light of certain provisions of 8 U.S.C. § 1252. For the reasons that follow, we will convert this appeal into a petition for review and exercise jurisdiction over it under the REAL ID Act, thus obviating any need to address the questions relating to habeas jurisdiction.[8]

_____

[8]We will assume without deciding that Jordon exhausted his derivative citizenship claim as required by 8 U.S.C. § 1252(d)(1). It is true that "the exhaustion requirement of 8 U.S.C. § 1252(d) is jurisdictional," *Popal v. Gonzales*, 416 F.3d 249, 252 (3d Cir. 2005), and that we are generally obligated to address jurisdictional questions. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-94 (1998) (rejecting notion of "hypothetical jurisdiction" adopted by some courts of appeals whereby those courts would assume jurisdiction and assess the underlying merits); *Interfaith Community Organization v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005) ("we have an obligation to examine our own jurisdiction") (citations omitted). However, we have observed that "*Steel Co.* may be somewhat limited as it specifically indicated that 'Article III jurisdiction is always an antecedent question[,]'" *Bowers v. National Collegiate Athletic Ass'n*, 346 F.3d 402, 415 (3d Cir. 2003) (quoting *Steel Co.*, 523 U.S. at 101), and concluded that *Steel Co.* therefore "should not be understood as requiring courts to answer all questions of 'jurisdiction,' broadly understood, before addressing the existence of the cause of action sued upon." *Id.* Thus, in *Bowers*, we found that *Steel Co.* only "requires courts to answer questions concerning *Article III jurisdiction* before reaching other questions." *Id.* (emphasis added); *see also Marquez-Almanzar v. INS*, 418 F.3d 210, 216 n.7 (2d Cir. 2005) (where jurisdictional prerequisites at issue are statutory, not constitutional, they need not be addressed and exercise of "hypothetical jurisdiction" is permissible); *Restoration Preservation Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54, 59

Several provisions of 8 U.S.C. § 1252 (both pre- and post-REAL ID Act) make the courts of appeals, not district courts, the first and often last judicial arbiter of nationality claims such as Jordon's. Section 1252(b)(5) expressly provides for the courts of appeals to review claims of nationality asserted in the course of agency removal proceedings, and to resolve them unless they present disputed factual issues, in which case they should be remanded to a district court for resolution in the first instance. *See* 8 U.S.C. § 1252(b)(5)(A) and (B). Section 1252(b)(5)(C) makes clear that nationality claims may be "decided only as provided in this paragraph." Prior to the REAL ID Act, courts were divided over whether these provisions created the "exclusive" means by which nationality claims at least initially make their way to the federal courts, and thus abrogated district courts' jurisdiction over habeas petitions raising such claims. *Compare Taniguchi v. Schultz*, 303 F.3d 950, 955 (9th Cir. 2002) (concluding that while § 1252(b)(5) "does not foreclose completely the writ of habeas corpus[,]" and district courts retain habeas jurisdiction where the petitioner has no other judicial remedy, there is no habeas jurisdiction over nationality claims because "§ 1252(b)(5) provides a specific remedy[,] ... [and] is the exclusive means of determining U.S. citizenship for aliens in removal proceedings."); *Alvarez-Garcia v. INS*, 234 F. Supp. 2d 283, 289 (S.D.N.Y. 2002) ("[t]he sole and exclusive avenue for review of a claim of nationality is by direct petition for review to the [courts of appeals].") *with Dragenice v. Ridge*, 389 F.3d 92, 100 (4th Cir. 2004) ("habeas review [of

---

(1st Cir. 2003) ("while Article III jurisdictional disputes are subject to *Steel Co.*, statutory jurisdictional disputes are not.") (citation omitted). Because the question of exhaustion here, while jurisdictional in nature, has a statutory provenance, the reasoning in *Bowers* permits us to avoid addressing it. *See also Marquez-Almanzar*, 418 F.3d at 216 n.7 (following same approach in dealing with exhaustion challenge to nationality claim).

nationality claims] must remain available.") (citations omitted); *Gomez v. BICE*, 315 F. Supp. 2d 630, 634-35 (M.D. Pa. 2004) (rejecting government's argument that district courts lack jurisdiction over habeas petition raising nationality claim under § 1252(b)(5) and concluding "that it has jurisdiction over habeas petitions regarding nationality."). Jordon, of course, raised his nationality claim in the first instance in his habeas petition to the District Court, not in a petition for review to us, thus appearing to present the question of the District Court's habeas jurisdiction over his claim.

The REAL ID Act, which became law just days after argument in this case on May 11, 2005, allows us to avoid the dense thicket of habeas jurisdiction over nationality claims. The REAL ID Act amended 8 U.S.C. § 1252 in several pertinent respects. First and foremost, it made petitions for review filed with the court of appeals the "sole and exclusive means for judicial review of" most orders of removal, including the order of removal at issue here. *See* 8 U.S.C. § 1252(a)(5) (1999 & Supp. 2005); *Bonhometre v. Gonzales*, 414 F.3d 442, 445 (3d Cir. 2005). In so doing, the Act expressly eliminated district courts' habeas jurisdiction over removal orders. *Id.*; *see also Kamara v. Attorney General of the United States*, 2005 WL 2063873, at \*4 (3d Cir. Aug. 29, 2005). At the same time, the Act also enlarged our jurisdiction, stating that none of its provisions "which limit[ ] or eliminate[ ] judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D) (2005); *Bonhometre*, 414 F.3d at 445. We have explained that this amendment evidences Congress's "intent to restore judicial review of constitutional claims and questions of law presented in petitions for review of final removal orders. This now permits all aliens, including criminal aliens, to obtain review of constitutional claims and questions of law upon filing of a petition for review with an

12

appropriate court of appeals." *Papageorgiou v. Gonzales*, 413 F.3d 356, 358 (3d Cir. 2005).

We have also acknowledged that Congress left no doubt that the REAL ID Act's changes to § 1252(a)(2)(D) would be retroactive. *See* REAL ID Act § 106(b) (providing that the new § 1252(a)(2)(D) "shall take effect upon the date of the enactment of this division and shall apply to cases in which the final administrative order of removal ... was issued before, on, or after the date of the enactment of this division."); *Papageorgiou*, 413 F.3d at 358 ("Our review of the Act confirms that Congress expressly intended that the amendments restoring our jurisdiction be applied retroactively to pending petitions for review.").

The REAL ID Act expressly addresses habeas petitions pending before district courts as of the date of enactment, providing that they shall be transferred to

> the court of appeals for the circuit in which a petition for review could have been properly filed under section 242(b)(2) of the Immigration and Nationality Act (8 U.S.C. § 1252), as amended by this section. . . . The court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242, except that subsection (b)(1) of such section [relating to the 30-day filing deadline] shall not apply.

REAL ID Act § 106(c). The Act is silent as to the procedural posture here – an appeal from a district court's grant of a habeas petition pending before the court of appeals as of the date of the Act's enactment. But we have nonetheless concluded that "[d]espite this silence, it is readily apparent, given Congress' clear intent to have all

13

challenges to removal orders heard in a single forum (the court of appeals) [H.R. Conf. Rep. No. 109-72] at 174 [(2005)], that those habeas petitions that were pending before this Court on the effective date of the REAL ID Act are properly converted to petitions for review and retained by this Court." *Bonhometre*, 414 F.3d at 446. Thus, in *Bonhometre*, we converted an appeal from a district court's grant of a habeas petition raising a Fifth Amendment due process claim into a petition for review, disregarded the District Court's disposition, and reviewed the merits of the due process claim. *Id.* at 446-47. And in *Kamara*, we likewise converted an appeal from a district court's grant of a habeas petition raising a Fifth Amendment due process claim into a petition for review, vacated the District Court's disposition, and examined the merits of the due process claim. *Kamara*, 2005 WL 2063873, at *5-6. Following the lead of *Bonhometre* and *Kamara*, we will convert the instant appeal from the District Court's grant of Jordon's habeas petition into a petition for review, vacate the District Court's decision, and address the merits of Jordon's derivative citizenship claim as if it had been raised in a petition for review before us in the first instance. *See also Marquez-Almanzar v. INS*, 418 F.3d 210, 215-16 (2d Cir. 2005) (treating a § 2241 petition raising a nationality claim, which was dismissed for lack of jurisdiction by the district court and then transferred to the Second Circuit via 28 U.S.C. § 1631, as a petition for review under the REAL ID Act, and proceeding to merits).

This approach not only obviates the need to address the question of district courts' habeas jurisdiction over nationality claims discussed above, but also obviates the question of whether Jordon was "in custody" for purposes of § 2241. As noted, we have vacated the District Court's decision and have converted BICE's appeal from the District Court's grant of Jordon's habeas petition into a petition for review. Accordingly, whether the District Court had subject matter jurisdiction over Jordon's petition challenging BICE's

14

custody, i.e., whether Jordon was "in custody" under § 2241, is a jurisdictional inquiry no longer relevant to our analysis here.

Despite the conversion of this appeal from a grant of a habeas petition into a petition for review, our scope of review remains the same, and we may thus examine claims of constitutional or legal error, including Jordon's derivative citizenship claim. *See Bonhometre*, 414 F.3d at 446; *Kamara*, 2005 WL 2063873, at *6 (quoting *Bakhtriger v. Elwood,* 360 F.3d 414, 425 (3d Cir. 2004)) ("In the wake of [*INS v. St. Cyr*, 533 U.S. 289 (2001)], we are not aware of any cases that have upheld habeas review of factual findings or discretionary determinations in criminal alien removal cases. Rather, all circuits to decide the issue have limited criminal alien habeas petitions to constitutional challenges or errors of law."). We exercise plenary review over Jordon's derivative citizenship claim, as it presents a pure question of statutory interpretation. *See Tavarez v. Klingensmith*, 372 F.3d 188, 189 n.2 (3d Cir. 2004) (citation omitted).

III.

The Derivative Citizenship Claim

We turn, finally, to the merits of Jordon's derivative United States citizenship claim. Jordon presents his derivative citizenship claim under the former 8 U.S.C. § 1432(a). Congress repealed § 1432(a) with its enactment of the Child Citizenship Act of 2000 ("CCA"), § 103, Pub. L. No. 106-395, 114 Stat. 1631. The CCA had an effective date of February 27, 2001, 120 days following its enactment. Because all relevant events respecting Jordon's claimed derivative citizenship occurred prior to the CCA's effective date,

15

§ 1432(a) controls our analysis.[9] *See Bagot v. Ashcroft*, 398 F.3d 252, 257 n.3 (3d Cir. 2005) (citation omitted); *see also Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005) ("derivative citizenship is determined under the law in effect at the time the critical events giving rise to eligibility occurred.") (citations omitted).

Section 1432(a) provides that

A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:

(1) The naturalization of both parents; or
(2) The naturalization of the surviving parent if one of the parents is deceased; or
(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

---

[9]The most recent relevant date is the year 1991, when the New York divorce court issued its final divorce decree for Jordon's parents.

16

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. §1432(a) (1999), repealed by CCA, § 103, Pub. L. No. 106-395, 114 Stat. 1631.

Section 1432(a) thus provides several avenues by which a child born outside of the United States to alien parents can become a United States citizen. The parties agree that two of these avenues – "[t]he naturalization of both parents," § 1432(a)(1), or "[t]he naturalization of the surviving parent if one of the parents is deceased," § 1432(a)(2) – are inapplicable. Subsections (3), (4) and (5) set forth, in combination, a third avenue for establishing derivative citizenship: If the child can establish (1) "[t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents"; and (2) that "[s]uch naturalization takes place while such child is under the age of eighteen years"; and (3) that "[s]uch child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3)

17

of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years[,]" the child is a United States citizen under § 1432(a). *See* 8 U.S.C. § 1432(a)(3)-(5).

There is no dispute that subsection (5) has been satisfied here, and because the facts clearly establish that Jordon's mother was naturalized before Jordon turned 18, subsection (4) has also been satisfied. The disagreement between the parties centers on whether subsection (3) – specifically the first clause of subsection (3), requiring "[t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents" – has been satisfied. Jordon frames two issues under § 1432(a)(3): "1) whether § 1432(a) requires that Jordon's mother already be 'legally separated' at the time she is naturalized; and 2) whether Jordon's parents' marital separation was a sufficiently 'legal' separation for § 1432(a) purposes." He argues that the District Court properly answered these questions "no" and "yes," respectively, and therefore properly found that he was a derivative citizen under § 1432(a). For the reasons that follow, we disagree as to Jordon's suggested answer to the first inquiry he frames, and must therefore reject his claim of derivative citizenship.

In Jordon's view, the critical term in the first clause of § 1432(a)(3) is "when." He contends that "when" should not necessarily be read in its temporal sense (i.e., "after"), suggests it could be read in its conditional sense (i.e., "if"), and in any event argues that "when" modifies "having legal custody of the child," not "naturalization." We need not labor over the proper construction of § 1432(a)(3)'s first clause or its use of "when," however, because a decision of this Court issued post-briefing in this case sets forth the controlling interpretation of § 1432(a)(3)'s first clause. *See Bagot v. Ashcroft*, 398 F.3d 252 (3d Cir. 2005). In *Bagot*, we made crystal

18

clear that a child seeking to establish derivative citizenship under § 1432(a) must prove four essential facts under § 1432(a)(3):

> (1) that his [parent] was *naturalized after a legal separation* from his [other parent]; (2) that his [parent] was naturalized before [the child] turned eighteen; (3) that he was residing in the United States as a permanent legal resident at the time of his father's naturalization; and (4) that his [parent] had legal custody at the time of [the parent's] naturalization.

398 F.3d at 257 (emphasis added). As such, *Bagot* conclusively rejects Jordon's (and the District Court's) view that the custodial parent need not be legally separated from his or her spouse prior to the custodial parent's naturalization for purposes of § 1432(a)(3). *See also Minasyan*, 401 F.3d at 1076 (stating that in order to satisfy the first clause of subsection (3), the petitioner must establish that "at the time of his mother's naturalization, 'there ha[d] been a legal separation of the parents.'") (citing § 1432(a)(3)) (brackets in original).

Bagot's conclusion that legal separation must occur prior to naturalization in order to satisfy the first clause of § 1432(a)(3) compels us to reject Jordon's derivative citizenship claim because the evidence conclusively demonstrates that Jordon's mother was naturalized long before his parents' legal separation. The evidence is undisputed that Jordon's mother was naturalized on March 13, 1985, and that any "legal separation" occurred no earlier than some time in 1988 (by virtue of Jordon's father's abandonment), and possibly as late as July 11, 1991 (by virtue of the issuance of a final divorce

19

decree).[10]  Accordingly, Jordon cannot establish an essential element of his derivative citizenship claim under § 1432(a), and we will therefore deny Jordon's petition for review.[11]

---

[10]In light of these facts, we need not and do not decide in this case the precise meaning of "legal separation" under § 1432(a)(3).

[11]We note that there may be some question whether the waiver Jordon executed in connection with his readmission under the Visa Waiver Program precludes his derivative citizenship claim here. BICE does not suggest as much, and given our view of the merits of the derivative citizenship claim, we need not and do not address the effect of a Visa Waiver Program waiver on a derivative citizenship claim.