

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-14-2005

# Gelaneh v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3071

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Gelaneh v. Atty Gen USA" (2005). *2005 Decisions.* Paper 233.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/233

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 04-3071


TEFERI GELANEH,
Appellant

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF UNITED STATES AMERICA;
TOM RIDGE, SECRETARY OF DEPARTMENT OF HOMELAND SECURITY;
MICHAEL D. GARCIA, Assistant Secretary of the Bureau of
Immigration and Customs Enforcement (BICE); MATT JACK, Interim District
Director of the Bureau of Immigration and Customs Enforcement (BICE)


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 03-CV-2231)
District Judge: The Honorable Dennis M. Cavanaugh
_____


Submitted Under Third Circuit LAR 34.1(a)
May 10, 2005


Before: SLOVITER and FISHER, Circuit Judges.
and POLLAK,[*] District Judge.

(FILED: November 14, 2005)

_____

[*]Honorable Louis H. Pollak, Senior District Judge for the United States District
Court of the Eastern District of Pennsylvania, sitting by designation.

1

OPINION OF THE COURT

_____

POLLAK, District Judge.

Teferi Gelaneh is challenging a ruling of an Immigration Judge ("IJ"), affirmed by the Board of Immigration Appeals ("BIA"), which directs Gelaneh's removal. Gelaneh is now before us on appeal from a judgment of the United States District Court for the District of New Jersey, which dismissed, for lack of jurisdiction, his habeas corpus petition. For the reasons which follow, we convert the instant appeal from the District Court's denial of Gelaneh's habeas petition into a petition for review, but conclude his petition for review must be denied.

I

Gelaneh is a native of Ethiopia and a lawful permanent resident who is currently separated from his American citizen wife, and who has two citizen children. On May 27, 1998, Gelaneh was convicted in a Pennsylvania court (the Court of Common Pleas of Lehigh County) of possessing a controlled substance – namely, cocaine – with intent to deliver, in violation of Pa. Stat. Ann. § 780.113(a)(30), and was sentenced to five years' probation. Five days later, on June 1, 1998, the Immigration and Nationalization Service ("INS") arrested Gelaneh and instituted removal proceedings.[1] He was charged with

_____

[1] The INS has since been dissolved and its functions absorbed into the new Department of Homeland Security in 2003.

2

being subject to removal pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. §

1227(a)(2)(A)(iii) (conviction of an aggravated felony), and INA § 237(a)(2)(B)(I), 8

U.S.C. § 1227(a)(2)(A)(iii) (conviction of a controlled substances offense). After nine

days of detention, Gelaneh, on June 10, 1998, was released on bail on posting a bond of

$7,000.[2]

On April 8, 1999, the IJ ruled that Gelaneh's offense did not constitute a

"particularly serious crime," 8 U.S.C. § 1231(b)(3)(B)(ii), and that Gelaneh was thus

eligible to apply for withholding of removal pursuant to § 1231(b)(3)(A). Section

1231(b)(3)(A) bars the Attorney General from "remov[ing] an alien to a country if the

Attorney General decides that the alien's life or freedom would be threatened in that

country because of the alien's race, religion, nationality, membership in a particular social

group, or political opinion." Section 1231(b)(3)(B), however, contains an exception

authorizing removal if the alien is found by the Attorney General to have "been convicted

by a final judgment of a particularly serious crime,"and who is thus "a danger to the

community of the United States." Gelaneh also applied for relief under Article 3 of the

Convention Against Torture ("CAT"),[3] eligibility for which does not depend on the

---

[2]Gelaneh contends, and the government does not dispute, that he has complied completely with his bail conditions.

[3]Article 3, section 1 of CAT states: "No State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."
   This provision has been incorporated into United States law under the Foreign Affairs Reform and Restructuring Act of 1998: "It shall be the policy of the United States

gravity of the alien's conviction. After hearing testimony, the IJ found that Gelaneh had not met his burden of proving that he would face persecution (the necessary predicate for § 1231(b)(A) relief) or torture (the necessary predicate for CAT relief) upon his return to Ethiopia. The IJ thus denied both claims for relief, and ordered that Gelaneh be removed to Ethiopia.

Gelaneh filed a timely appeal with the BIA, which affirmed the IJ's result on April 18, 2003. In affirming the IJ's ultimate determination, the BIA, however, rejected the IJ's conclusion that Gelaneh's drug conviction is not a "particularly serious crime." Instead, the BIA found that, under *Matter of Y-L-*, 23 I & N Dec. 270 (A.G. 2002), Gelaneh's drug conviction presumptively constituted a "particularly serious crime," and thus rendered him ineligible for withholding of removal under § 1231(b)(3)(A). Regarding the CAT claim, the BIA agreed with the IJ that Gelaneh had not met his burden of establishing that it was more likely than not that he would be tortured were he returned to Ethiopia, *see* 8 C.F.R. § 1208.17. The BIA thus dismissed Gelaneh's appeal, thereby rendering final his deportation order.

On May 15, 2003, Gelaneh filed a petition for habeas corpus, pursuant to 28 U.S.C. § 2241, seeking review of the BIA's decision, and on June 18, 2004, the District

not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States." Pub. L. No. 105-227, Div. G., Title XXII, § 2242, 112 Stat. 2681, 2681-822, codified as note to 8 U.S.C. § 1231.

Court dismissed Gelaneh's petition. The District Court found that Gelaneh, having been released from INS detention on bail at the time he filed his § 2241 habeas petition, could not satisfy the jurisdictional requirement of § 2241 that a petitioner be "in custody."[4] The District Court also found an alternate bar, which it characterized as jurisdictional, to

---

[4] 28 U.S.C. § 2241(c) provides:

> The writ of habeas corpus shall not extend to a prisoner unless –
>
> > (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
> >
> > (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
> >
> > (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
> >
> > (4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
> >
> > (5) It is necessary to bring him into court to testify or for trial.

Other courts have found that the institution of removal proceedings, with its attendant constraints, is equatable with "custody," whether or not the respondent is incarcerated at the time of filing the § 2241 petition. *See, e.g.*, *Simmonds v. INS*, 326 F.3d 351, 354 (2d Cir. 2003); *Mustata v. United States*, 179 F.3d 1017, 1022 n. 4 (6th Cir. 1999); *Nakaranurack v. United States*, 68 F.3d 290 (9th Cir. 1995); *Galaviz-Medina v. Wooten*, 27 F.3d 487, 493 (10th Cir. 1994), *cert. denied*, 513 U.S. 1086 (1995).

5

Gelaneh's petition, concluding that the petition raised challenges solely to the BIA's factual or discretionary determinations, and that such challenges were not cognizable under § 2241.

This timely appeal followed.

II

The REAL ID Act, which became law on May 11, 2005, amended 8 U.S.C. § 1252 so that petitions for review filed with the court of appeals are the "sole and exclusive means for judicial review of" most orders of removal, including the order of removal at issue here. *See* 8 U.S.C. § 1252(a)(5) (1999 & Supp. 2005); *Bonhometre v. Gonzales*, 414 F.3d 442, 445 (3d Cir. 2005). "In so doing, the Act expressly eliminated district courts' habeas jurisdiction over removal orders." *Jordan v. Attorney General of the United States*, 2005 WL 2334686, at *4 (3d Cir. Sept. 26, 2005); *see also Bonhometre*, 414 F.3d at 445; *Kamara v. Attorney General of the United States*, 420 F.3d 202 (3d Cir. 2005).

Further, "[w]e have also acknowledged that Congress left no doubt that the REAL ID Act's changes to § 1252(a)(2)(D) would be retroactive." *Jordan*, 2005 WL 2334686, at *4. Consequently, "those habeas petitions that were pending before this Court on the effective date of the REAL ID Act are properly converted to petitions for review and retained by this Court." *See* REAL ID Act § 106(c); *Bonhometre*, 414 F.3d at 446. In

converting petitioner's habeas petition into a petition for review, we vacate the District Court's decision denying habeas relief, and address the merits of Gelaneh's claims as if they had been raised in a petition for review before us in the first instance. *See Jordan*, 2005 WL 2334686, at *4; *Bonhometre*, 414 F.3d at 446-47; *Kamara*, 420 F.3d at 210. Necessarily, "[t]his approach . . . obviates the question of whether [the petitioner] was 'in custody' for purposes of § 2241" and is therefore "a jurisdictional inquiry no longer relevant to our analysis here." *Jordan*, 2005 WL 2334686, at *5.

Despite the conversion of this appeal from a habeas petition into a petition for review, our scope of review remains the same. *See Bonhometre*, 414 F.3d at 446; *Kamara*, 420 F.3d at 210. Thus, examining Gelaneh's claims, "we are limited to pure questions of law, and to issues of application of law to fact, where the facts are undisputed and not the subject of challenge." *Kamara*, 420 F.3d at 210 (internal citations and quotation marks omitted). While we review the BIA's legal determinations de novo, we afford *Chevron* deference to the BIA's reasonable interpretations of immigration regulations. *Id*.

III

Before the IJ and BIA, Gelaneh had sought two forms of relief – deferral of removal pursuant to the CAT, and withholding of removal pursuant to 8 U.S.C. § 1231(b)(3)(A). We conclude that the BIA properly applied the law to the facts of this

7

case when it denied Gelaneh's CAT claim. We also review Gelaneh's § 1231(b)(3)(A) claim of withholding of removal, but believe this claim too fails because Gelaneh was not prejudiced by certain deficiencies in the BIA's opinion.

A

In determining that Gelaneh was not eligible for relief under the CAT, the BIA stated the correct legal standard, which required Gelaneh to prove that it was more likely than not that he would be tortured were he returned to Ethiopia, *see* 8 C.F.R. §1208.16(c)(4) ("If the immigration judge determines that the alien is more likely than not to be tortured in the country of removal, the alien is entitled to protection under the Convention Against Torture"). Moreover, we agree with the BIA's application of this standard to the IJ's finding that Gelaneh gave "incredible" testimony and failed to provide any supporting documents establishing his identity. When – as here – the lack of credibility goes to the heart of the alien's claim that he will be more likely than not be tortured if returned to his home country, denial of eligibility for relief under the CAT is appropriate. Accordingly, the BIA's determination that Gelaneh is ineligible for relief under the CAT is sustained.

B

Withholding of removal is not available to the alien who has been convicted of a "particularly serious crime," § 1231(b)(3)(B)(ii), a category that includes all aggravated felonies for which the alien was sentenced to imprisonment for five or more years, §

8

1231(b)(3)(B)(iv), as well as those crimes that the Attorney General deems to be particularly serious "notwithstanding the length of sentence imposed," *id.* The decision as to whether a crime is "particularly serious" is thus committed to the discretion of the Attorney General. *See generally* § 1231(b)(3)(B).

In *Matter of Y-L-*, 23 I & N Dec. 270 (AG 2002), the Attorney General exercised the discretion afforded him under § 1231(b)(3)(B) and ruled that "[a]ggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes' within the meaning of . . . 8 U.S.C. § 1231(b)(3)(B) (2000)." *Id.* at 270. The presumption would be rebutted "only under the most extenuating circumstances that are both extraordinary and compelling." *Id.* The Attorney General went on to enumerate six such circumstances: "(I) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles." *In re Y-L-*, 23 I. & N. Dec. 276-77. The Attorney General then stated that only if all of these circumstances were present "would it be appropriate to consider whether other, more unusual circumstances (e.g., the prospective distribution was solely for social

9

purposes, rather than for profit) might justify departure from the default interpretation that drug trafficking felonies are 'particularly serious crimes.'" *Id.* at 277.

In the case at bar, the BIA in three sentences summarily reversed the IJ's determination that Gelaneh's offense was not a particularly serious crime:

> It is undisputed that [Gelaneh] has been convicted of a drug trafficking crime. Subsequent to the Immigration Judge's decision, the Attorney General has issued a decision finding that such crimes presumptively constitute "particularly serious crimes" within the meaning of section 241(b)(3)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(B). *Matter of Y-L-*, 23 I&N Dec. 270 (A.G. 2002) *overruling Matter of S-S-*, 22 I&N Dec. 458 (BIA 1999). [Gelaneh] is therefore subject to a mandatory bar to a grant of withholding of removal because he has been convicted of a particularly serious crime. Section 241(b)(3)(B) of the Act; 8 C.F.R. § 1208.16(d)(2).

J.A. at 21. Thus, even though *Y-L-* created a *presumption*, and not a *per se* rule, that drug trafficking offenses constitute "particularly serious crimes," the BIA automatically concluded that Gelaneh's offense fell within the presumption. However, to comply with due process when deciding whether a criminal alien has committed a "particularly serious" crime, the Board must make an individualized determination, "rather than blindly following a categorical rule, i.e., that all drug convictions qualify as 'particularly serious crimes.'" *Chong v. Quarantillo*, 264 F.3d 378, 387 (3d Cir. 2001) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001)).[5] Therefore, where, as here, the petitioner

---

[5]Indeed, the Attorney General explained his decision to characterize drug offenses as *presumptively*, rather than *per se*, "particularly serious crimes" by citing to *Chong* for the proposition that "that the application of 'per se' determinations is legally

challenges not the result of a discretionary determination but the process by which that determination is made, we are not barred from reviewing his claim.

To provide Gelaneh with an individualized determination, the BIA was required to determine whether the six potentially extenuating circumstances enumerated in *Matter of Y-L-* existed in his case. There is no evidence that the BIA did so here. As described above, the BIA simply noted the presumption of seriousness, and then summarily applied the presumption to Gelaneh's offense. To be sure, "[t]he Board is not required to write an exegesis on every contention, but only to show that it has reviewed the record and grasped the movant's claims." *Sevoian v. Ashcroft*, 290 F.3d 166, 178 (3d Cir. 2002). Here, however, the Board did not demonstrate that it was even aware of exceptions to the presumption of seriousness announced in *Y-L*, let alone that it had determined that Gelaneh's offense did not constitute such an exception. When the Board treats a rebuttable presumption as an irrebuttable per se rule, it fails to provide the individualized determination that due process requires.

But there can be "no due process violation in the absence of prejudice." *Wilson v. Ashcroft*, 350 F.3d 377, 381 (3d Cir. 2003). Thus, to prevail on this petition for review, Gelaneh must show that the BIA likely would have reached a different result had the BIA attempted to address the presumption in proper fashion. Gelaneh has, however, proffered nothing to suggest that ampler BIA inquiry would have led the BIA to conclude that the

questionable." *Y-L-*, 23 I & N Dec. at 274 n.12.

11

circumstances of Gelaneh's crime would have satisfied the six *Y-L-* factors. Gelaneh

avers that he was found with 21 grams of cocaine when he was arrested; the police report

stated that it was 41 grams. Either amount would appear to be too substantial to qualify

as "a very small quantity" as is required under the first *Y-L-* factor. *See, e.g.*, U.S.S.G. §

2D1.1(c) (specifying 10-16 months imprisonment for a defendant convicted of trafficking

25 grams or less of cocaine if that defendant, like Gelaneh, has no prior criminal history).[6]

Further, Gelaneh was apprehended in the course of buying drugs with marked bills given

to him by a confidential informant. He later told the police that he had been involved in

three prior drug sales. Thus, it would have been unlikely that the BIA would have

concluded that Gelaneh's involvement in the drug transactions was "merely peripheral" as

is required under the third *Y-L-* factor. In short, with respect to at least two of the six

factors, it is highly improbable that more careful BIA scrutiny would have led the BIA to

find Gelaneh's position meritorious – and Gelaneh would have needed to prevail on all

six factors in order merely to cross the threshold of eligibility for withholding of removal.

Finally, even if the BIA had ultimately concluded that Gelaneh's crime was not

"particularly serious," it could have found Gelaneh eligible for withholding of relief only

if it had disagreed with the IJ's ruling that Gelaneh did not establish a "clear probability"

of persecution in Ethiopia, *INS v. Stevic*, 467 U.S. 407, 413 (1984). Gelaneh presented

---

[6]Gelaneh's pre-sentence report stated that, "given the amount of the drug that was confiscated in the arrest," the Pennsylvania sentencing guidelines "clearly stipulate a period of incarceration."

12

the same evidence to support his § 1231(b)(3)(A) and CAT claims, and the IJ determined that this evidence was insufficient to meet Gelaneh's burden of proof for either claim. Thus, the IJ concluded that Gelaneh's "incredible testimony and the absence of any supporting documents establishing his identity (when he had ample opportunity to obtain them) leaves this court no choice but to deny his applications for withholding of removal and relief under the Torture Convention." J.A. at 35.

In addressing the IJ's denial of Gelaneh's CAT claim, the BIA was required to review, and did review, the very same evidence that the IJ relied upon to deny Gelaneh's § 1231(b)(3)(A) claim, and the BIA found that evidence wanting. *See* J.A. at 21 ("The testimony of the respondent and his witnesses, when assessed against the background and other documentary evidence in the record, is inadequate to meet the stringent burden of proving that it is more likely than not that he will face torture if returned to Ethiopia."). The burden of establishing a risk of future torture is more stringent than is the burden of establishing a risk of future persecution. *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003). Since Gelaneh presented the same evidence in support of both claims for relief, it is hardly likely that the BIA would have found that Gelaneh had failed to establish a clear probability of persecution but had succeeded in establishing a clear probability of torture.

In short, the record in this case forecloses the possibility that the BIA, on ampler review of Gelaneh's claims, would have granted Gelaneh relief under § 1231(b)(3)(A). Accordingly, while the BIA ought to have been more thorough in addressing the question

13

whether Gelaneh's offense of possessing cocaine with intent to distribute was a "particularly serious" crime, we cannot say that Gelaneh was prejudiced as a result of the deficiencies in the BIA's opinion.

## Conclusion

Our review of the record establishes that, although the BIA's treatment of one aspect of Gelaneh's appeal gave rather short shrift to due process, Gelaneh has failed to demonstrate resultant prejudice. Accordingly, Gelaneh's petition for review is denied.