OPINION OF THE COURT
FUENTES, Circuit Judge.
Petitioner Martinho Tavares Rodrigues seeks review of a decision by the Board of Immigration Appeals (“BIA”) dismissing his appeal from an Immigration Judge’s (“IJ”) order of removal. Rodrigues’s challenge to the BIA’s decision is based on a former version of 8 U.S.C. § 1432(a), under which Rodrigues claims to have automatically derived United States citizenship when his father became a naturalized citizen in 1993. For the reasons detailed below, we find no merit to his argument and deny his petition for review.
I.
Rodrigues was born in 1982 in Cape Verde. When he was two years old, his parents divorced and his father emigrated to the United States. Although there was no formal custody agreement, Rodrigues stayed with his mother in Cape Verde. Three years later, in 1987, Rodrigues and his mother also emigrated to the United States.
From 1987 to 1991, Rodrigues lived with his mother in Roxbury section of Boston. In 1991, motivated by a lack of space in his mother’s home, Rodrigues moved in with his father, who lived only a few blocks away. This living arrangement continued for eight years, until 1999. During this period of time, on October 21, 1993, Rodri-gues’s father became a naturalized United States citizen. His mother never became a citizen — she was, and still remains, a legal permanent resident.
Between 1991 and 1999, Rodrigues’s father provided Rodrigues with shelter, clothing, and food. Rodrigues, however, listed his mother’s address as his legal address on official forms and documents. In addition, his mother attended all school conferences, youth offender appearances, and listed him as a dependent on her tax returns. Rodrigues’s father did not list him as a dependent on his tax returns, and did not mention him as a dependent on various immigration forms filled out during this time period. As a result, the IJ *168 and BIA both determined that while Rod-rigues lived with his father, the two parents had an informal arrangement sharing parental duties.
In 2004, Rodrigues was convicted of selling crack cocaine within 1000 feet of a school and was sentenced to a term of 51 months in prison. In 2006, the INS charged him with removability. Rodrigues in turn filed a motion to terminate the proceedings, asserting that he had derivatively obtained United States citizenship when his father was naturalized. On July 31, 2007, the IJ rejected the derivative citizenship claim and ordered Rodrigues removed to Cape Verde. He appealed to the BIA, which dismissed his appeal on December 13, 2007, 2007 WL 4699942. Rodrigues then filed this petition for review and a motion for stay of removal. We granted his stay and now consider the merits of his appeal.
II.
In cases concerning the removability of an aggravated felon, we do not review the BIA’s factual or discretionary decisions. Jordon v. Att’y Gen. U.S., 424 F.3d 320, 328 (3d Cir.2005). However, to the extent that the petitioner’s arguments present pure questions of statutory interpretation, we exercise plenary review. Id. “The bur.den of proof of eligibility for citizenship is on the applicant.” Bagot v. Ashcroft, 398 F.3d 252, 256-57 (3d Cir.2005) (citing Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967)). “All doubts should be resolved in favor of the United States and against the claimant.” Id. (internal quotation marks omitted).
Rodrigues presents his claim for derivative citizenship under the former 8 U.S.C. § 1432(a), the law in effect during the relevant events in this case.[1] Jordon v. Att’y Gen. U.S., 424 F.3d 320, 328 (3d Cir.2005); Minasyan v. Gonzales, 401 F.3d 1069, 1075 (9th Cir.2005) (“[D]erivative citizenship is determined under the law in effect at the time the critical events giving rise to eligibility occurred.”). Pursuant to § 1432(a), a child born outside of the United States to alien parents automatically becomes a citizen of the United States upon fulfillment of the following conditions:
(1) The naturalization of both parents; or
(2) The naturalization of the surviving parent if one of the parents is deceased; or
(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
(4) Such naturalization takes place while such child is under the age of eighteen years; and
(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.
*169 § 1432(a). Rodrigues argues that he achieved derivative citizenship under § 1432(a)(3). To establish derivative citizenship under § 1432(a)(3), Rodrigues must prove four essential facts: “(1) that his father was naturalized after a legal separation from his mother; (2) that his father was naturalized before [Rodrigues] turned eighteen; (3) that he was residing in the United States as a permanent legal resident at the time of his father’s naturalization; and (4) that his father had legal custody at the time of [Rodrigues’s] naturalization.” Bagot, 398 F.3d at 257. The Government concedes the first three facts. Accordingly, this case turns on whether Rodrigues’s father had “legal custody” of Rodrigues in October 1993, when Rodri-gues’s father was naturalized.
Under BIA precedent, we engage in a two-step test to assess legal custody. First, we look to see if there is a “judicial determination or judicial or statutory grant of custody” to the parent in question. Id. at 259 (citing Matter ofM — , 3 I. & N. Dec. 850, 856 (B.I.A.1950)). If there has been no formal grant of custody, judicial or otherwise, “the parent in ‘actual uncontested custody* is deemed to have legal custody.” Id. (citing Matter of M — , 3 I. & N. Dec. at 856). Here, it is uncontested that Rodrigues’s mother and father separated without a formal custody arrangement. Accordingly, our focus will be on whether Rodrigues’s father satisfies the standard for “actual uncontested custody.”
As noted above, the IJ and BIA both determined that Rodrigues’s parents shared parental custody: Rodrigues lived with his father, but his mother provided a legal address, listed him as dependent on her tax returns, and handled school visits and court appearances. In light of these factual findings, both tribunals held that joint custody of the sort exhibited by Rod-rigues’s parents could not amount to actual uncontested custody. This interpretation — that joint custody by one citizen-parent and one non-citizen-parent cannot support a finding of actual uncontested custody by the citizen parent — is amply supported by the text and overarching purposes of § 1432(a).
Under § 1432(a), a child born outside the United States can become an citizen automatically under the following scenarios: (1) both his/her parents become naturalized; (2) his/her one surviving parent becomes naturalized (if the other parent is dead); or (3) the parent with legal custody becomes naturalized. See 8 U.S.C. § 1432(a). These scenarios have a basic condition in common: in all three scenarios, each living parent with a custodial interest in the child must be a United States citizen. The purpose of this rule was quite clear: it was structured to respect the rights of custodial parents who were not citizens of the United States by ensuring that derivative citizenship could not be automatically applied to their children. Bustamante-Barrera v. Gonzales, 447 F.3d 388, 397 (5th Cir.2006) (“Congress meant for § 1432(a) to protect the rights of both parents for as long as each one of them has legal rights over the child.”); Barthelemy v. Ashcroft, 329 F.3d 1062, 1066 (9th Cir.2003) (“[W]e think that Congress generally intended to provide automatic citizenship to children born abroad of alien parents only after the naturalization of both biological parents. This policy is rational for at least a few reasons, but we need only discuss one rationale here: the protection of parental rights. If United States citizenship were conferred to a child where one parent naturalized, but the other parent remained an alien, the alien’s parental rights could be effectively extinguished.”). Under this framework, § 1432(a) thus limits automatic changes in derivative citizenship to situations in which the non-citizen parent has been “removed *170 from the picture — either by death or by ‘legal separation.’ ” Cf. Wedderburn v. INS, 215 F.3d 795, 800 (7th Cir.2000).
In this case, the BIA determined that Rodrigues’s mother shared custodial rights with Rodrigues’s father during the time that Rodrigues’ father became naturalized. We do not review this factual determination. Jordon, 424 F.3d at 328. Because Rodrigues’s father did not have sole legal custody over Rodrigues at the moment he was naturalized, Rodrigues’s father did not have “actual uncontested custody” over Rodrigues. Bustamante-Bamra, 447 F.3d at 398 (“We hold that § 1432(a)(3)’s requirement that ‘the parent having legal custody of the child’ be a naturalized citizen of the United States is satisfied only when but one of two living and legally-separated parents is a naturalized U.S. citizen and that parent is vested with the sole legal custody of the child.”). Accordingly, without a showing of “actual uncontested custody,” Rodrigues was not eligible to obtain derivative citizenship upon the naturalization of his father.[2]
For the foregoing reasons, we will affirm the judgment of the BIA and dismiss Rodrigues’s petition.

. As noted in Jordon, Congress repealed § 1432(a) with its enactment of the Child Citizenship Act of 2000 (“CCA"), § 103, Pub.L. No. 106-395, 114 Stat. 1631, which had an effective date of February 27, 2001. See Jordon, 424 F.3d at 328. As in Jordon, all of the relevant events in this case took place prior to the CCA's effective date, so § 1432(a) controls our analysis. For the purposes of this Opinion, when we refer to " § 1432(a),” we are referring to the repealed version.

. The fact that both of Rodrigues’s parents wanted Rodrigues to achieve this derivative citizenship is, unfortunately, not relevant to our inquiry: the structure of the rule forbids Rodrigues from automatically becoming a citizen of the United States when only one of his custodial parents is a United States citizen.