MATTER OF CARDOSO

In Visa Petition Proceedings

A-24577322

*Decided by Board December 19, 1983*

(1) To obtain a preference status for the beneficiary as his unmarried son under section 203(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(2) (1982), a petitioner must establish that the beneficiary qualified as his "child" within the meaning of sections 101(b)(1) (A) or (C) of the Act, 8 U.S.C. §§ 1101(b)(1) (A) or (C) (1982).

(2) Under the Republic of Cape Verde, Decree-Law No. 84/76 of September 25, 1976, "Laws on Marriage, Divorce and Filiation," effective October 1, 1976, and Judgment No. 16-80, Department of Studies, Legislation and Documentation of the Ministry of Justice of the Republic of Cape Verde, dated May 21, 1980, there is no distinction between legitimate and illegitimate children, and all children have equal rights under the law.

(3) A beneficiary who was born in Cape Verde on or after October 1, 1976, is deemed the legitimate "child" of his or her natural father under section 101(b)(1)(A) of the Act, whereas a beneficiary who was under 18 years of age on that date is deemed the legitimated "child" of his or her natural father under section 101(b)(1)(C) of the Act.

ON BEHALF OF PETITIONER:     Pro se

BY:   Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

The petitioner has applied for visa preference status for the beneficiary as his unmarried son under section 203(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(2) (1982). In a decision dated September 9, 1981, and again on November 10, 1982, after our decision dated December 16, 1981, remanding the case, the district director twice denied the petition. The petitioner has appealed. The appeal will be sustained and the visa petition will be approved.

The petitioner is a 44-year-old male native of Republic of Cape Verde and a lawful permanent resident of the United States. The beneficiary is a 17-year-old native and citizen of Cape Verde. The beneficiary was born on August 5, 1966, to the petitioner and Jus-

tina Santos Barbosa Veiga, a widow. The natural parents did not intermarry.

The district director, finding that the beneficiary had been born out of wedlock and that the natural parents did not intermarry, concluded that the beneficiary did not qualify for visa preference status under section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1) (1982).

On appeal, the petitioner contends that the beneficiary was born legitimate; hence, he is eligible as his child under section 101(b)(1)(A) of the Act for immigration benefits under section 203(a)(2) of the Act. The petitioner relies on Republic of Cape Verde, Decree-Law No. 84/76 of September 25, 1976, "Laws on Marriage, Divorce and Filiation" (Appendix A), for the proposition that Cape Verde has abolished the legal distinction between legitimate and illegitimate children born either before or after its effective date. The petitioner has also proffered judgment No. 16-80, Department of Studies, Legislation and Documentation of the Ministry of Justice of the Republic of Cape Verde, dated May 21, 1980, in further support of his assertions (Appendix B).

On appeal, we sought the views of the Immigration and Naturalization Service as to the laws of Cape Verde pertinent to this matter. The appellate trial attorney on July 27, 1983, relying on Opinion No. 16/80 and Decree-Law No. 84/76, agrees with the petitioner. Reading the Decree-Law No. 84/76, the Service observes that the language of the preamble, as well as articles 2 and 22, indicates a fundamental change with significant ramifications was contemplated when the Decree was passed in 1976. The Service states that it seems unlikely that the law envisions the perpetuation of an aberrant discrimination against children born out of wedlock. Hence, the Service agrees that the effect of Decree-Law No. 84/76 applies to children born before its promulgation in 1976. Moreover, the Service, relying on Opinion No. 16/80, *supra*, agrees that Decree-Law No. 84/76 abolished the distinction between legitimate and illegitimate children.

Under section 203(a)(2) of the Act, a lawful permanent resident petitioner may accord visa preference status to an unmarried son if the son qualifies as the petitioner's child under section 101(b)(1) of the Act. *See Matter of Coker*, 14 I&N Dec. 521 (BIA 1974).

As relevant, sections 101(b)(1)(A) and (C) of the Act define a "child" as a legitimate child or a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of 18 years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

6

In light of Decree-Law No. 84/76, *supra,* and Opinion No. 16/80, *supra,* we agree that Cape Verde has abolished the legal distinction between legitimate and illegitimate children. We now hold that a child who was born in Cape Verde on or after October 1, 1976, is deemed the legitimate child of his or her natural father under section 101(b)(1)(A) of the Act. A child who was under 18 years of age on that date is included within the definition of a legitimated "child" of his or her natural father as set forth in section 101(b)(1)(C) of the Act. *See Matter of Clahar,* 18 I&N Dec. 1 (BIA 1981); *Matter of Pavlovic,* 17 I&N Dec. 407 (BIA 1980); *Matter of Obando,* 16 I&N Dec. 278 (BIA 1977).

Contained in the record is Registration of Birth, Republic of Cape Verde, dated May 1981, showing that the beneficiary, Jose Miguel Barbosa Pina Cardoso, was born on August 5, 1966. The petitioner, Antonio Pina Cardoso, unmarried, is shown as the father. Inasmuch as the beneficiary was acknowledged in 1981, while under the age of 18, we conclude that the beneficiary qualifies as the child of the petitioner under section 101(b)(1)(C) of the Act for immigration benefits under section 203(a)(2) of the Act. Therefore, the appeal will be sustained and the visa petition will be approved.

**ORDER:** The appeal is sustained and the visa petition is approved.

## APPENDIX A

### REPUBLIC OF CAPE VERDE MINISTRY OF JUSTICE

### LAWS ON MARRIAGE, DIVORCE AND FILIATION

### DECREE-LAW No. 84/76 of September 25, 1976

The laws governing filiation and parent-child relationships born out of our colonial past are inconsistent with the basic interests of our people and with the political and ideological principles espoused by PAIGC and by the Republic of Cape Verde.

In fact, through their aberrant discrim[in]ation between legitimate and illegitimate children according to whether such children were or were not born in lawful wedlock, such laws create inequalities and injustices which our current political system can no longer sanction or allow to continue.

Furthermore, based on obsolete inequalities between the father and the mother, the same laws offer solutions which fail to take into account the best interests of the children involved and the nec-

essary responsibility of both parents (the father and the mother) in the upbringing and education of their offspring.

The provisions of the current Civil Code with respect to filiation and paternal power run counter to the goals sought by the Party and the State in building a new society based on the principles of equality and equal responsibility.

To this extent, the solutions established under the present Decree-Law are both necessary and urgent.

Therefore, exercising the powers conferred under Article 15, Section 4 of the Law creating the State Political Organization, the Government hereby decrees and enacts the following provisions having the force of law:

## CHAPTER I

### General Provisions

ARTICLE 1.—Filiation is the relationship existing between a child and each of his or her parents.

ARTICLE 2.—In the eyes of the law, all children are considered equal, enjoy the same rights and are subject to the same duties and obligations vis-a-vis their parents regardless of the latters' civil status.

ARTICLE 3.—Parent-child relations shall be based on personal affection and mutual respect, with the parents responsible for the upbringing and education of their children and the latter for obeying and helping their parents.

ARTICLE 4.—Children are entitled to bear the surnames of both their parents, with their first surname derived from that of their mother and the second from that of their father.

## CHAPTER II

### Filiation

ARTICLE 5.—Maternity is a result of the very act of childbirth. Paternity, on the other hand, is established through an express declaration to such effect by the father, without prejudice to the provisions of the present Decree-Law and of other laws currently in force.

ARTICLE 6.—Notwithstanding the provisions of the following articles, children born in lawful wedlock or within a period of 300 days following the dissolution of the marital union are presumed the offspring of both spouses.

ARTICLE 7.—Under circumstances other than those referred to in the preceding article, paternity is presumed:

a) When the father voluntarily admits paternity in writing, which acknowledgement may take the form of an unofficial document;

b) When the alleged father cohabited openly with the mother during the period in which the child was presumably conceived;

c) In the case of minor children having acquired the status of "common-law" child.

ARTICLE 8.—A "common-law" child is a person considered and treated as a child by his would-be parents, whether jointly or separately, and reputed to be their child by the community or public-at-large.

ARTICLE 9.—(1) Children born out of wedlock must be registered and acknowledged either jointly or separately by both parents.

(2) In cases where only the mother appears to register the birth of a given child, she shall record the name of the child's father according to current legal requirements.

ARTICLE 10.—(1) Filiation proceedings or actions seeking adjudication of parenthood shall be instituted in all cases in which the father or mother's name is withheld or in which a party's maternity or paternity is being denied or challenged.

(2) Filiation proceedings are prohibited in all cases of children born to a married woman, with the sole exception of couples allegedly unable to have produced an offspring.

ARTICLE 11.—Filiation proceedings may be instituted by adult children or by the legal guardians of minors, as well as by the parent acknowledging his or her parentage against the other alleged parent of the child.

ARTICLE 12.—Challenges of paternity or maternity are the responsibility of the person claiming parentage and of the alleged child acting on his own behalf in the case of adult children or through a legal guardian where minors are concerned.

ARTICLE 13.—(1) Such challenges may also be filed by persons believing themselves to be the true father or mother of a child previously acknowledged by another person as his or her own child.

(2) Challenges of parentage involving adult children may not be instituted without their consent.

9

## CHAPTER III

### Paternal Power

ARTICLE 14.—(1) Parents are jointly responsible for the upbringing, education and support of their children until such time as the latter reach adulthood or attain full independence.

(2) Paternal power may be exercised only in the best interests of the child.

ARTICLE 15.—(1) Paternal power may be exercised by both parents, with both the mother and father vested with the same rights and obligations vis-a-vis all minor or dependent children.

(2) A single parent shall assume full paternal power upon the death or permanent or temporary disability of the other parent.

ARTICLE 16.—(1) The concept of paternal power includes the following parental rights and duties vis-a-vis their children:

a) Caring for and protecting dependent children, contributing to their economic maintenance and education and seeing to their welfare and normal growth and development;

b) Seeing to their education and intellectual and cultural growth and development by instilling in them a love of learning and sense of hard work;

c) Ensuring a proper moral and social upbringing and education vis-a-vis themselves as well as others and instilling in them a love for their country;

d) Diligently administering their property and representing them in all legal acts and business transactions whenever necessary;

e) Giving them independence;

f) Authorizing certain acts legally requiring parental consent;

g) Determining the legal domicile of all dependent children.

(2) In cases of minors undergoing punishment for a criminal offense, any form of parental consent required by law may be waived by the courts for the entire term of such punishment.

(3) Parents may dispose of children's property in the latters' best interests in cases of flagrant need or practicality subject to prior authorization by the competent court after hearing the case presented by the District Attorney's Office.

ARTICLE 17.—Desertion or neglect of a child's education, support or upbringing, as well as the failure by parents to perform or to properly perform any other parental duties and obligations are punishable by law as criminal offenses.

ARTICLE 18.—(1) Parents living separately shall agree among themselves as to the exercise of parental authority over their children.

(2) In the event the parents fail to reach an agreement in this connection, the matter shall be decided by the courts in the best interests of the child or children involved.

(3) The mother shall assume primary responsibility for the care and protection of infants up to the age of six months unless otherwise dictated by special circumstances.

(4) Court orders handed down pursuant to the two preceding paragraphs may be amended at any time in the event of a change in the corresponding circumstances.

ARTICLE 19.—(1) The courts may suspend or revoke the right of either or both parents to exercise parental authority under special circumstances.

(2) In cases where the right of both parents to exercise parental authority over minor children is suspended or revoked by the court, the latter shall appoint a legal guardian.

ARTICLE 20.—The suspension or revocation of their right to exercise parental authority does not release the parents from their child support obligations.

ARTICLE 21.—Parental power ceases to exist:

a) once the child reaches adulthood or enters into matrimony;

b) upon the death of the parent(s) or child;

c) with the child's adoption.

ARTICLE 22.—All previously enacted legislation containing provisions contrary to those of the present Decree-Law is hereby repealed.

ARTICLE 23.—(1) All disputes or controversies arising in connection with the enforcement of the present piece of legislation shall be settled by the Government after hearing the case presented by the Ministry of Justice.

(2) All matters not covered under the provisions of the present Decree-Law shall be resolved through necessary adaptations of other laws currently in force.

ARTICLE 24.—The present Decree-Law is effective as of October 1, 1976.

Pedro Pires—Abilio Duarte—Silvino da Luz—Osvaldo Lopes da Silva—Herculano Vieira—Carlos Reis—Amaro da Luz—Manuel Faustino—Sergio Centeio—Silvino Lima—David Hopffer Almada.

Enacted on July 17, 1976

For publication

By the President of the Republic of Cape Verde, ARISTIDES MARIA PEREIRA

In the presence of the National Assembly of the People of Cape Verde

(Published in Official Gazette No. 39 of September 25, 1976.)

## APPENDIX B

CONSULATE GENERAL OF THE REPUBLIC OF CAPE VERDE

### TRANSLATION

"Emblem of the Republic of Cape Verde"

Ministry of Justice
Minister Cabinet

### DECLARATION

I, JOSE JORGE LISBOA DA COSTA SANTOS, Cabinet Director of the Minister of Justice of the Republic of Cape Verde, do hereby declare that, referring to the application in the time of the Decree No. 84/86 [sic] of September 25, which regulates the relation between parents and their children, the following opinion No. 16/80 was expressed by the Department of Studies, Legislation and Documentation of the Ministry of Justice of the Republic of Cape Verde.

### DECISION No. 16/80

Matter: Retroactive effects of the Decree-Law No. 84/76, of September 25, which regulates the relation between parents and their children.

The question raised by Mrs. Georgina Brito Lima and Mr. Georgino Victor Lima seems of easy solution: The Decree-Law 84/76, of September 25, has a retroactive effect. Usually, the application of the Law in the time appears to be difficult, and even, in some instances, controversial. But this is not the case.

Indeed the No. 2, of Article 12 of the Portuguese Civil Code, in force, states: "WHEN the Law ( . . . ) disposes directly on the content of certain juridical regulations, excluding the facts which generated them, it shall be understood that the Law comprises the latter's relations already established that may exist at the date that it comes into force."

As one can surely realize through a mere reading of it, the Decree-Law 84/76 does not rule on the fact, (absence of marriage between the progenitors) which generated the juridical relations

12

between the progenitors and Mrs. Georgina and Mr. Georgino, (illegitimate filiation).

The Decree-Law 84/76, abolished the aberrant situation of human discrimination (distinction between legitimate and illegitimate children), and established a new content to the relations between parents and their children.

Therefore, as of September 25, 1976, and by force of No. 2 of the Article 12 of the Civil Code, Mrs. Georgina Brito Lima and Mr. Georgino Victor Lima ceased to be illegitimate or legitimate *offspring* of Mr. Vitorino Gregorio Lima.

This is all we deem proper to render on the matter.

Department of Studies, Legislation and Documentation, Praia, this 21st of May, 1980.—The Jurist, S/Illegible.

For being the truth and upon request, I issue this Declaration, which I set my hand and affixed the seal of this Office.

Cabinet of the Ministry of Justice, in Praia City, this 11th of October, 1982.—The Cabinet Director—S/JOSE JORGE LISBOA DA COSTA SANTOS.