PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3550
_____

GELSON LOPES BRANDAO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

Respondent
_____

On Petition for Review of the Decision of the
Board of Immigration Appeals
(BIA-1:  A040-144-317)
Immigration Judge:  Walter A. Durling
_____

ARGUED May 24, 2011

BEFORE:  FUENTES, FISHER,
and NYGAARD, Circuit Judges.

(Filed: August 16, 2011)

Sarah J. Hunt, Esq. (Argued)
Suite One
99 Lexington Avenue
Cambridge, MA  02138

Counsel for Petitioner

Eric H. Holder, Jr., Esq.
David V. Bernal, Esq.
Zoe J. Heller, Esq.
Thomas W. Hussey, Esq.
Liza S. Murcia, Esq. (Argued)
United States Department of Justice
Office of Immigration Litigation, Civil Division
P. O. Box 878
Ben Franklin Station
Washington, DC  20044

Counsel for Respondent

_____

OPINION OF THE COURT
_____


NYGAARD, <u>Circuit</u> <u>Judge</u>.

Gelson Lopes Brandao petitions this Court to review the Board of Immigration Appeals' decision to affirm the immigration judge's removal order.  Brandao specifically

challenges the ruling that a Cape Verde statute legitimated him, making him ineligible for derivative citizenship pursuant to 8 U.S.C. § 1432(a)(3). We will deny the petition.

I.

Brandao was born in Cape Verde on January 24, 1979, and admitted into the United States as a legal permanent resident on August 23, 1985, when his mother immigrated. His mother became a United States citizen on July 11, 1996. The Department of Homeland Security placed him in removal proceedings in 2008 for a 2005 conviction on an aggravated felony. Brandao sought to terminate the removal proceedings pursuant to former Section 321(a) of the Immigration and Nationality Act (8 U.S.C. § 1432(a)(3) (repealed 2000)), contending that he derived United States citizenship through his mother, who was unwed when he was born and who naturalized prior to his eighteenth birthday.[1] Brandao did not provide any information on his biological father, claiming he did not know him.

The immigration judge ordered Brandao's removal, accepting the reasoning of the United States Citizenship and Immigration Service in denying Brandao's application for

---

[1] Congress repealed section 1432(a) by enacting the Child Citizenship Act of 2000, § 103, Pub. L. No. 106-395, 114 Stat. 1631. The Act became effective on February 27, 2001, 120 days following its enactment. Because all relevant events respecting Brandao's claimed derivative citizenship occurred prior to the Act's effective date, section 1432(a) controls our analysis.

derivative citizenship.[2]  The Board of Immigration Appeals affirmed the immigration judge's order.

## II.

While we generally do not have jurisdiction to review an aggravated felon's  removal order (8 U.S.C. § 1252(a)(2)(C)), we do have jurisdiction to determine our jurisdiction, particularly in cases such as this where the petitioner claims to be a national of the United States, and no material issues of fact are presented.  8 U.S.C. § 1252(b)(5)(A).  We also have jurisdiction to review constitutional claims or questions of law.  8 U.S.C. § 1252(a)(2)(D).

Under the REAL ID Act of May 11, 2005, Pub. L. No. 109-13, "factual or discretionary determinations are outside of our scope of review." *Pierre v. Attorney General of United States,* 528 F.3d 180, 184 (3d Cir. 2008) (en banc) (citing *Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006)). We give plenary review to statutory questions presented in petitions for review on derivative citizenship.  *Jordon v. Attorney General of the United States*, 424 F.3d 320, 328 (3d Cir. 2005).

We are mindful that, because there are dual sources of jurisdiction applicable here, a split exists among courts of appeals on whether the BIA's interpretation of section 1432(a) is subject to the deferential review specified in

---

[2] The immigration judge incorporated an earlier interlocutory decision on a motion to terminate proceedings into his April 8, 2009 decision ordering Brandao's removal.

4

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-44 (1984).[3] We have not addressed this issue. However, deference to the BIA would not impact our conclusion in this case. Therefore, we need not, and do not, discuss it here.[4]

## III.

The INA section at issue reads as follows:

> A child born outside of the United States of alien parents, or of an alien parent and a citizen parent

---

[3] "By statute, the Attorney General is entrusted with the administration and enforcement of the INA, which states that the 'determination and ruling by the Attorney General with respect to questions of law shall be controlling.' 8 U.S.C. § 1103(a)(1). The Attorney General, in turn, has delegated this authority to the BIA. 8 C.F.R. § 3.1(d)(1)." *Restrepo v. Attorney General of the United States,* 617 F.3d 787, 792 n. 2 (3d Cir. 2010). Yet, Courts of Appeals differ on the applicability of *Chevron* in the context of section 1432(a)(3). *See e.g. Minasyan v. Gonzales*, 401 F.3d 1069, 1074 (9th Cir. 2005) (The INA gives direct, sole authority to the courts of appeals on the issue of nationality, eliminating the need for *Chevron* deference.); *but see Walker v. Holder,* 589 F.3d 12, 20 (1st Cir. 2009) ("[W]e are required to afford some degree of deference to the BIA's interpretation in this matter.").

[4] When the BIA issues its own opinion without merely adopting the opinion of the immigration judge, we ordinarily review the BIA's decision rather than that of the immigration judge. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir.2002).

who has subsequently lost citizenship of the United States becomes a citizen of the United States upon fulfillment of the following condtions: . . . (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents, or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if (4) such naturalization takes place while such child is under the age of eighteen years. . . .

8 U.S.C. § 1432(a) (1994)(repealed 2000). In determining that Brandao is not qualified for derivative citizenship, the BIA referenced a Cape Verde law that it already interpreted in another case. Article 2 of the Cape Verde law states the following.

In the eyes of the law, all children are considered equal, enjoy the same rights and are subject to the same duties and obligations vis-a-vis their parents regardless of the latters' civil status.

Decree Law No. 84/76, Article 2, September 25, 1976 (Cape Verde) (reprinted in *Matter of Cardoso*, 19 I. & N. Dec. 5, 8

app. A (BIA 1983)). In *Matter of Cardoso*, the BIA determined, in the context of reviewing a decision on a preference status, that this law abolished the distinction between illegitimate and legitimate children, concluding as follows.

> We now hold that a child who was born in Cape Verde on or after October 1, 1976, is deemed the legitimate child of his or her natural father under section 101(b)(1)(A) of the Act.

*Matter of Cardoso*, 19 I. & N. Dec. at 7. The BIA took note of the immigration judge's reliance upon this case and did not find any error. Brandao disagrees that he is legitimated under section 1432(a)(3), arguing that the Cape Verde law was written to protect children born out of wedlock from discrimination, and that a separate procedure to establish paternity still exists at law. Even if we accept Brandao's claims as accurate, they miss the point.

In affirming the constitutionality of section 1432(a)(3), we held that it was consistent with the "important governmental objective of allowing single parent derivative citizenship while protecting the rights of alien parents by limiting circumstances in which it (derivative citizenship) can occur." *Catwell v. Attorney General of the United States*, 623 F.3d 199, 211 (3d Cir. 2010).[5] In the instant case, we must

---

[5] Other courts of appeals who have reviewed the BIA's decision to deny derivative citizenship based upon section 1432(a)(3) similarly interpret the statute as upholding the

7

understand the term "legitimation" in section 1432(a)(3) in light of this objective.

Though terms in the INA must take their meaning from federal law, we recognize that where—as here—a statutory definition is lacking, it is sometimes proper to look to state or foreign law as a "rule of decision" to discern the statute's application in a particular case. *Morgan v. Attorney General of the United States*, 432 F.3d 226, 231 (3d Cir. 2005). In this context, we note that the BIA has developed a uniform approach to assessing foreign law in determining whether a foreign national seeking citizenship has been legitimized under 8 U.S.C. § 1101(b)(1)(c).

> When a country where [the foreign national] was born and resides eliminates all legal distinctions between legitimate and illegitimate children, all natural children are deemed to be

rights of the alien parent. *See e.g. Bustamente-Barrera v. Gonzales*, 447 F.3d 388, 397 (5th Cir. 2006)(analyzing the issue of legal custody under section 1432(a)(3)); *Lewis v. Gonzales*, 481 F.3d 125, 131 (2d Cir. 2007) (Even where the natural parents were not wed, section 1432 ensures that "with few exceptions, *both* parents must naturalize in order to confer automatic citizenship on a child."); *Wedderburn v. I.N.S.,* 215 F.3d 795, 800 (7th Cir. 2000) (In the case of unwed parents, derivative citizenship under this provision is limited to "situations in which the other [non-citizen] parent has been removed from the picture-either by death or by 'legal separation.'").

> the legitimate or legitimated offspring of their natural father
>
> . . . .

*Matter of Hernandez*, 19 I. & N. Dec. 14 (BIA 1983). This general approach to understanding foreign law is useful in analyzing section 1432(a)(3), because—consistent with the statute's objective—it provides the broadest protection possible for the alien parent's rights. As a result, we conclude that it is appropriate to use this general rule to interpret Cape Verde law in Brandao's derivative citizenship claim.

Applying the rule articulated by the BIA to the present case there is no doubt that, as the BIA determined in *Matter of Cardoso*, Article 2 of Cape Verde's Decree Law No. 84/76 abolishes the distinction of legitimacy and illegitimacy. Upon the law's enactment in 1976, every child born thereafter in Cape Verde—whether in or out of wedlock—is legitimated. Moreover, every such child is legitimated regardless of whether the natural father takes formal steps to assert paternity. Brandao has utterly failed to refute this interpretation of the Decree Law.

Brandao was born in Cape Verde in 1979. From this we conclude that, under Cape Verde law, Brandao is legitimated. Accordingly, he is not eligible for derivative citizenship under section 1432(a)(3).

For all of these reasons, we will deny the petition for review.