NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2423
_____

ROBINSON W. BORDAMONTE,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A035-979-158)
Immigration Judge: Hon. Alberto J. Riefkohl
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 19, 2016

Before:   JORDAN, HARDIMAN, and GREENAWAY, JR., *Circuit Judges.*

(Filed: January 20, 2016)
_____

OPINION*
_____

_____

  * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Robinson Bordamonte, a native of the Philippines who claims United States citizenship, petitions for review of a Board of Immigration Appeals ("BIA") decision dismissing his appeal from a removal order. In that order, the Immigration Judge ("IJ") denied his motion to terminate removal proceedings and ordered his removal under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony. Bordamonte argues that, although he never went through naturalization himself, he received derivative citizenship automatically while a minor when his mother naturalized in 1978, and that he is therefore not an alien at all, let alone a removable alien. As support, he relies on a statute formerly codified at 8 U.S.C. § 1432(a), which was repealed by Congress in 2000 and which provided that an alien child automatically acquired citizenship upon the naturalization of his custodial parent, if "there ha[d] been a legal separation of the parents." At the time of his mother's naturalization, Bordamonte was in her sole custody and she had been physically separated from her husband (Bordamonte's father) for nearly six years. But that physical separation had not been formally acknowledged or enforced by any government action, as was necessary to be considered a "legal separation" under § 1432(a). Accordingly, Bordamonte did not acquire derivative citizenship at the time of his mother's naturalization, and we will deny his petition for review.

## I. BACKGROUND

The salient facts of this case are not in dispute. Bordamonte was born in the Philippines in 1965 to parents who had married earlier that same year. In 1972, Bordamonte's mother left the Philippines and was admitted to the United States as a

2

lawful permanent resident. Bordamonte remained with his father in the Philippines. He joined his mother in the United States four year later, when, at the age of ten, he too was admitted as a lawful permanent resident. After Bordamonte's entry, his mother had sole custody, and, in 1978, she became a naturalized United States citizen. By that time, Bordamonte was twelve years old and had lived in the United States with his mother for over two years as a lawful permanent resident. At the time of his mother's naturalization, Bordamonte lived with her in New Jersey and his parents had lived separately for a period of nearly six years. Bordamonte's father came to the United States in 1979 as a lawful permanent resident after he and his wife "were able to work out [their] problems" and reconcile. (A.R. at 261.) He became a naturalized citizen in 1986.

Bordamonte has continued to live in the United States as a lawful permanent resident, having never pursued naturalization. It is undisputed that he married a United States citizen and has two children who are also citizens. In 2011, he was convicted in the United States District Court for the District of New Jersey of conspiring to transport stolen securities in interstate commerce, in violation of 18 U.S.C. § 371 and contrary to 18 U.S.C. § 2314, and conspiring to receive falsely made securities in interstate commerce, in violation of 18 U.S.C. § 2315 and 18 U.S.C. § 371. He was sentenced to thirty-three months' imprisonment. Two years later, Bordamonte was also convicted in New Jersey state court for conspiracy and theft by deception, in violation of N.J. Stat. Ann. § 2C:5-2 and § 2C:20-4, and was sentenced to four years' imprisonment.

After those convictions, removal proceedings began. The Department of Homeland Security served Bordamonte with a notice to appear charging him as

3

removable from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. Bordamonte filed a motion to terminate removal proceedings, asserting that he was not removable but was, instead, a citizen through the naturalization of his mother.

The IJ denied Bordamonte's motion and concluded that Bordamonte was removable based upon his convictions. The IJ's denial of the motion to terminate removal proceedings hinged on the absence of any "document issued by a court altering the marital relationship" of Bordamonte's parents. (A.R. at 162.) The BIA sustained Bordamonte's appeal, holding that the IJ erred by insisting upon a document issued specifically by a court rather than any "formal action by a competent government authority altering the marital relationship … ." (A.R. at 91.) On remand, a different IJ again denied Bordamonte's motion to terminate, this time on the basis that no evidence, issued by any government authority (court or otherwise), existed to establish his parents' legal separation within the meaning of 8 U.S.C. § 1432(a), as required for Bordamonte to have received derivative citizenship from his mother's naturalization. The BIA dismissed Bordamonte's appeal, and this timely petition for review followed. In his petition, Bordamonte does not contest that his convictions render him removable from the United States if he is not actually a citizen.[1] His petition rests entirely on his claim of derivative citizenship.

---

[1] Indeed, since the first IJ concluded that Bordamonte was convicted of an aggravated felony, he has not challenged that conclusion. Accordingly, even had Bordamonte tried to contest that status here, we would have been without jurisdiction to address the issue. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 594-95 (3d Cir. 2003)

4

## II.   DISCUSSION[2]

Typically, "[i]n reviewing the merits of Petitioner's claims, this Court reviews the agency's conclusions of law *de novo*, 'subject to established principles of deference.'" *Mendez-Reyes v. Att'y Gen.*, 428 F.3d 187, 191 (3d Cir. 2005) (quoting *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004)).  These "principles of deference" include the deference owed to administrative agencies pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).  But "because there are dual sources of jurisdiction applicable here, a split exists among courts of appeals on whether the BIA's interpretation of section 1432(a) is subject to the deferential review specified in *Chevron*." *Brandao v. Att'y Gen.*, 654 F.3d 427, 428 (3d Cir. 2011).  We have not

---

(holding that the Court lacks jurisdiction to review issues not raised before the BIA because 8 U.S.C. § 1252(d)(1) provides for judicial review of final orders of removal "only if … the alien has exhausted all administrative remedies").

[2] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3).  We exercise jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).  Although the jurisdictional statute strips us of jurisdiction to review a final order of removal against an alien who is removable by virtue of an aggravated felony, 8 U.S.C. § 1252(a)(2)(C), it also requires that we decide an alien's claim of citizenship unless the claim presents disputed factual issues, 8 U.S.C. § 1252(b)(5)(A), and grants jurisdiction to review constitutional claims and questions of law, 8 U.S.C. § 1252(a)(2)(D).  Reading these provisions together, "we have jurisdiction to consider any constitutional or legal claims that may be presented in this petition for review." *Morgan v. Att'y Gen.*, 432 F.3d 226, 229 (3d Cir. 2005).  Because "[t]he issue of derivative citizenship is a purely legal issue of statutory interpretation," *id.*, we have jurisdiction to decide the merits of Bordamonte's claim of derivative citizenship.  *See Jordon v. Att'y Gen.*, 424 F.3d 320, 328 (3d Cir. 2005) ("[W]e may thus examine claims of constitutional or legal error, including [the alien's] derivative citizenship claim."); *see also Brandao v. Att'y Gen.*, 654 F.3d 427, 428 (3d Cir. 2011) ("While we generally do not have jurisdiction to review an aggravated felon's removal order, we do have jurisdiction to determine our jurisdiction, particularly in cases such as this where the petitioner claims to be a national of the United States, and no material issues of fact are presented." (internal citation omitted)).

addressed the issue in the past, and we need not address it here, as deference to the BIA would not alter our conclusion in this case. *Id*.

"There are two sources of citizenship, and two only: birth and naturalization." *Miller v. Albright*, 523 U.S. 420, 423 (1998) (internal quotation marks omitted). As Bordamonte concedes, he was not born in the United States, so naturalization is his only possible basis for claiming citizenship. An alien can only become a naturalized citizen "in strict compliance with the terms of an authorizing statute," *INS v. Pangilinan*, 486 U.S. 875, 884 (1988), and "[a]ll doubts should be resolved in favor of the United States and against the claimant," *Bagot v. Ashcroft*, 398 F.3d 252, 257 (3d Cir. 2005) (internal quotation marks omitted). Bordamonte bears the burden to prove his citizenship. *Id*. at 256-57.

For his claim of citizenship, Bordamonte relies solely upon former 8 U.S.C. § 1432(a). That section "distinguishes between the children of still-married parents, who automatically acquire citizenship only if *both* parents are naturalized, and the children of legally separated, widowed, and unmarried parents, who automatically acquire citizenship if the custodial parent is naturalized." *Brissett v. Ashcroft*, 363 F.3d 130, 134 (2d Cir. 2004). In relevant part, § 1432(a) provides that a "child born outside of the United States of alien parents ... becomes a citizen of the United States upon ... [t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents ... ." 8 U.S.C. § 1432(a).[3] That distinction – conferring

_____

[3] The statute also required that the child be under eighteen years of age and residing in the United States as a lawful permanent resident at the time of the custodial

derivative citizenship when a custodial parent has been naturalized, but only if the couple has been legally separated – was intended to "protect[] the rights of alien parents by limiting circumstances in which it (derivative citizenship) can occur."[4] *Catwell v. Att'y Gen.*, 623 F.3d 199, 211 (3d Cir. 2010). An alien who acquires derivative citizenship under that provision does so by operation of law. *In re Fuentes-Martinez*, 21 I. & N. Dec. 893, 896 (B.I.A. 1997) ("No application is filed, no hearing is conducted, and no certificate is issued when such citizenship is acquired.").

Although § 1432(a) was repealed in 2000,[5] it continues to control claims of derivative citizenship in cases such as this one, where "all relevant events respecting [the alien's] claimed derivative citizenship occurred prior to" its repeal. *Jordon v. Att'y Gen.*, 424 F.3d 320, 328 (3d Cir. 2005). "The relevant times are the date of the child's birth, the time of the child's entry into the United States, and the date of the parent's

---

parent's naturalization, 8 U.S.C. § 1432(a)(4)-(5), neither of which conditions are in dispute here. Although former 8 U.S.C. § 1432(a)(1) also provided for derivative citizenship upon "[t]he naturalization of both parents," that provision does not apply to Bordamonte because his father's 1986 naturalization occurred when he was no longer under eighteen years of age. Bordamonte makes no argument that his father's naturalization resulted in his derivative citizenship.

[4] "[Legislative] history indicates that Congress wanted to ensure that only those alien children whose 'real interests' were located in America with their custodial parent, and not abroad, should be automatically naturalized. We also think Congress could have rationally concluded that requiring the naturalization of both parents of the alien child, when the parents remain married, was necessary to promote marital and family harmony and to prevent the child from being separated from an alien parent who has a legal right to custody." *Nehme v. INS.*, 252 F.3d 415, 425 (5th Cir. 2001).

[5] On October 30, 2000, Congress repealed § 1432 by enacting the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 (2000), effective February 27, 2001, which, *inter alia*, eliminates the "legal separation" condition for derivative citizenship after naturalization of a custodial parent.

7

naturalization." *Morgan v. Att'y Gen.*, 432 F.3d 226, 230 (3d Cir. 2005). Bordamonte does not dispute the applicability of § 1432(a) to his claim of derivative citizenship.

Rather, the sole issue in dispute is whether Bordamonte's parents were legally separated at the time of his mother's naturalization in 1978, as is required for his claim of citizenship to be legitimate. Bordamonte contends that his parents were legally separated because New Jersey law provides – and so provided in 1978 – that a period of at least eighteen consecutive months of separate habitation establishes sufficient grounds for divorce and a "presumption that there is no reasonable prospect of reconciliation." N.J. Stat. Ann. § 2A:34-2(d). At the time of his mother's naturalization, Bordamonte's parents had lived apart for six years. To Bordamonte, the fact that such a period of separation provides grounds for divorce also qualifies it as a "legally recognized separation in New Jersey." (Opening Br. at 18.)

We rejected substantially the same argument in *Morgan v. Attorney General*, 432 F.3d 226 (3d Cir. 2005). There, the petitioner's parents had been living separately for at least four years at the time of her mother's naturalization, and the petitioner claimed that her parents were thus legally separated by virtue of Pennsylvania's "no fault" divorce statute, which permitted a divorce when the couple had lived apart for at least two years. *Id*. at 233. In rejecting the claim of derivative citizenship, we surveyed our sister circuits and concluded that "every court of appeals that has considered the question has concluded that a 'legal separation' requires some formal action." *Id*. at 232. Accordingly, we held "that a legal separation for purposes of § 1432(a) occurs only upon a formal governmental action, such as a decree issued by a court of competent

8

jurisdiction that, under the laws of a state or nation having jurisdiction over the marriage, alters the marital relationship of the parties." *Id*. at 234. We reasoned that "including an informal separation within the provision's terms would effectively eviscerate the force of the term 'legal' from the statute." *Id*. (internal quotation marks omitted). Consistent with that holding, we rejected the claimant's argument regarding her parent's legal separation because it "overlook[ed] the requirement that separation in Pennsylvania is recognized only by a divorce secured through a judicial order." *Id*. "Without the entry of the decree there ha[d] been no change in the legal existence of the marriage … ." *Id*.

The same holds true here. Bordamonte does not dispute that no formal government action recognized or gave legal effect to his parents' lengthy separation. To the contrary, he repeatedly emphasizes in his brief that his parents had a "private agreement" to separate. (Opening Br. at 5, 20-21.) But that private agreement has no legal effect under New Jersey law. As in *Morgan*, we "defer to the jurisdiction[] with authority over the marriage to determine the meaning of legal separation for purposes of § 1432(a)(3)." *Morgan*, 432 F.3d at 233. Under New Jersey law, which both sides agree had authority over the marriage at issue here, a private agreement to separate requires judicial imprimatur before it will have legal effect. *Cf. Konzelman v. Konzelman*, 729 A.2d 7, 15 (N.J. 1999) (stating that courts may only give effect to "consensual agreements … provided their provisions fully reflect the mutual wishes of the parties and their enforcement is fair and just"). As Bordamonte points out, his parents' separation made them "eligible for divorce" (Reply Br. at 4), but that eligibility had not been given legal effect by any formal governmental action, as required by *Morgan*.

9

Bordamonte hangs much of his argument to the contrary on *Morgan*'s recognition that "[c]onceivably, some jurisdictions might consider parties 'legally separated' if they lived apart for a period of time without seeking any governmental imprimatur." *Morgan*, 432 F.3d at 234 n.4 (noting also that "[w]e know of no jurisdiction that has adopted such a policy"). But what he fails to recognize is that New Jersey is not such a jurisdiction. The fact that Bordamonte's parents had privately agreed to separate, and may have had legal cause for divorce by virtue of that separation, did not, in itself, effect a legal change in their marital status under New Jersey law. In listing the possible grounds for divorce, New Jersey law notes that divorce "may be adjudged" for any of the listed reasons, including separation. N.J. Stat. Ann. § 2A:34-2. The statute "does not create a vested right to a divorce … ." *Dunston v. Dunston*, 305 A.2d 813, 814 (N.J. Super. Ct. Ch. Div. 1973). "Mere physical separation of the parties … will not be deemed to terminate a marriage." *Portner v. Portner*, 460 A.2d 115, 120 (N.J. 1983); *see also Brandenburg v. Brandenburg*, 416 A.2d 327, 332 (N.J. 1980) ("[M]ere physical separation alone is an insufficient indication that a marriage is effectively at an end."). Absent government recognition, the legal significance of his parents' six-year separation was entirely inchoate. Because New Jersey law did not recognize Bordamonte's parents as "legally separated," as we construed that phrase in *Morgan*, his claim of derivative citizenship must fail.

While § 1432(a) may be subject to criticism – which is perhaps why Congress has since repealed it and eliminated the "legal separation" requirement, *see supra* note 5 – we have jurisdiction only to review any constitutional or legal questions associated with

Bordamonte's removal. 8 U.S.C. § 1252(a)(2)(D). "Once it has been determined that a person does not qualify for citizenship, ... [a] court has no discretion to ignore the defect and grant citizenship." *Pangilinan*, 486 U.S. at 884 (internal quotation marks omitted). Given our holding in *Morgan*, and the necessity of formal governmental action to recognize and establish a "legal separation" for the purposes of 8 U.S.C. § 1432(a), we cannot conclude that Bordamonte's parents were legally separated at the time of his mother's naturalization in 1978. Accordingly, he did not then receive derivative citizenship, and his motion to terminate removal proceedings was properly denied.

## III.    CONCLUSION

For the foregoing reasons, we will deny the petition for review.

11