**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2235
_____

DAMION GLENROY VANDO DAVIS,

                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A042-256-487)
Immigration Judge:  Alice Song Hartye
_____

Argued on September 7, 2023

Before:  CHAGARES, *Chief Judge*; HARDIMAN and MONTGOMERY-REEVES,
*Circuit Judges*.

(Opinion filed: February 29, 2024)
_____

John H. Peng [ARGUED]
Prisoners' Legal Services of New York
41 State Street
Suite M112
Albany, NY 12207
        *Counsel for Petitioner*

Sarah H. Paoletti
University of Pennsylvania School of Law
Transnational League Clinic
3501 Sansom Street
Philadelphia, PA 19104

Meredyth Yoon
5680 Oakbrook Parkway
Suite 148
Norcross, GA 30093
    *Counsel for Amici Curiae National Immigration Project of the National Lawyers
Guild, Asian Americans Advancing Justice, Atlanta, and Southern Poverty Law Center in
Support of Petitioner*

Merrick B. Garland
Nancy Canter
Matthew A. Connelly
Jaclyn G. Hagner
Lindsay M. Vick [ARGUED]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
    *Counsel for Respondent*

_____

OPINION[*]

_____


MONTGOMERY-REEVES, *Circuit Judge*.

Damion Glenroy Vando Davis was born out of wedlock in Jamaica to parents who never married. In 1989, Davis began living as a lawful permanent resident in the United States. Davis's father naturalized when Davis was 16, and Davis's mother naturalized when Davis was 21. In 2019, the Government sought to remove Davis because of his criminal history. Before the Immigration Judge, Davis moved to terminate his removal

---

[*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

proceedings, arguing that he had derived citizenship from his father under the first clause of former 8 U.S.C. § 1432(a)(3) (repealed 2000) (the "Marriage Clause").[1] The Immigration Judge rejected Davis's argument, and the Board of Immigration Appeals affirmed that ruling.

Davis now petitions this Court for review of the Board of Immigration Appeals' order. For the first time, Davis also argues that the second clause of former § 1432(a)(3) (the "Legitimation Clause"),[2] which permitted unwed mothers but not unwed fathers to pass down citizenship, violates the equal protection guarantees of the Fifth Amendment as applied to him. As explained below, the Immigration Judge did not err in concluding that Davis did not derive citizenship from his father under the Marriage Clause. And Davis lacks standing to bring his constitutional challenge to the Legitimation Clause. Thus, we will deny in part and dismiss in part the petition.

## I.    BACKGROUND

Davis's parents, Delroy Davis and Dorothy Williams, "became involved in a romantic relationship in 1976 when [they] both lived in Jamaica. As a result of [that] relationship [Davis] was born on August 13, 1978, in Jamaica." CAR 228. Delroy and

---

[1] The Marriage Clause provides that a child born outside the United States to noncitizen parents becomes a United States citizen upon "[t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents." 8 U.S.C. § 1432(a)(3) (repealed 2000).

[2] The Legitimation Clause provides that a child born outside the United States to noncitizen parents becomes a United States citizen upon "the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation." *Id.*

3

Williams did not have a marriage ceremony but considered themselves "to be in a common law marriage." *Id.* "During the time that [Delroy and Williams] were together [they] lived at 12 Longston Terrace, Kingston, Jamaica." *Id.* Their "relationship began to come to an end" in 1982 when Delroy traveled to the United States. *Id.*

Davis was admitted to the United States as a lawful permanent resident on November 2, 1989, when he was 11. When Davis was 16, Delroy became a naturalized citizen. Williams became a naturalized citizen when Davis was 21. Davis did not take any steps to naturalize because Davis and his parents believed that he had derived citizenship.

In 2019, the Department of Homeland Security ("DHS") served Davis with a notice to appear, charging him as removable under 8 U.S.C. § 1227(a)(2)(E)(ii) for violating a protective order. DHS later added charges of removability based on Davis's other criminal history. The Immigration Judge sustained the charge of removability under certain grounds. Afterward, Davis filed an appeal with the Board of Immigration Appeals, which affirmed the Immigration Judge's decision.[3] Davis then filed this petition for review.

---

[3] Davis also applied for asylum, withholding of removal, and protection under the Convention Against Torture, which the Immigration Judge denied. Davis did not challenge these rulings in his appeal to the Board of Immigration Appeals or before us. Accordingly, we will not discuss these rulings further.

4

## II.    JURISDICTION

The Board of Immigration Appeals had jurisdiction under 8 C.F.R. §§ 1003.1(c) (2020) and 1003.2 (a) and (c).  We have jurisdiction to review the threshold question of whether Davis is a United States citizen.  *Dessouki v. Att'y Gen.*, 915 F.3d 964, 966 (3d Cir. 2019); *Brandao v. Att'y Gen.*, 654 F.3d 427, 428 (3d Cir. 2011).  On the one hand, if we conclude "from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, [we] shall decide the nationality claim."  8 U.S.C. § 1252(b)(5)(A).  On the other hand, if we conclude "that a genuine issue of material fact about the petitioner's nationality is presented, [we] shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim."  8 U.S.C. § 1252(b)(5)(B).  The ultimate "burden of proof of eligibility for citizenship is on the applicant[,]" and "[a]ll doubts 'should be resolved in favor of the United States and against the claimant.'"  *Bagot v. Ashcroft*, 398 F.3d 252, 256–57 (3d Cir. 2005) (quoting *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967)).  When determining whether a genuine issue of material fact about the petitioner's nationality is presented, however, we apply the familiar summary judgment standard and treat the Government as the moving party.  *Espichan v. Att'y Gen.*, 945 F.3d 794, 797 (3d Cir. 2019).

Additionally, "[w]e always have jurisdiction to determine our own jurisdiction."  *Zurn Indus., LLC v. Allstate Ins. Co.*, 75 F.4th 321, 326 (3d Cir. 2023) (citing *United States v. Kwasnik*, 55 F.4th 212, 215 & n.1 (3d Cir. 2022)).

## III. DISCUSSION

Davis argues that he derived citizenship from his father under either the Marriage Clause or the Legitimation Clause of § 1432(a)(3). As to the Marriage Clause, Davis contends that he derived citizenship because his parents entered, and subsequently dissolved, a common-law marriage. As to the Legitimation Clause, Davis argues that it deprived him of citizenship on gender-based and race-based grounds in violation of the Fifth Amendment's Equal Protection Clause because, without these constitutional defects, Davis would have derived citizenship from his father. We address each argument in turn.

To begin, we look to the law as it stood at Davis's birth in 1978, and at the time his father naturalized in 1994. *Morgan v. Att'y Gen.*, 432 F.3d 226, 230 (3d Cir. 2005). To derive citizenship under either clause at the relevant times, § 1432(a) provided that:

> (a) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:
>
> . . .
>
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>
> (4) Such naturalization takes place while such child is under the age of eighteen years; and

6

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

## A.    The Marriage Clause[4]

Davis contends that his parents entered a common-law marriage under Jamaican law and legally separated when they stopped cohabitating.  Thus, Davis asserts that he derived citizenship from his father under the Marriage Clause.  To derive citizenship under the Marriage Clause, Davis must show, among other things, that his parents had been married and then legally separated.  *See Espichan*, 945 F.3d at 798–99 (explaining that a marriage is a "requisite antecedent to a 'legal separation'" under the statute).  To determine if Davis's parents were married within the meaning of the statute, we look to the "legal rules of the place where the marriage [may have been] performed."  *Morgan*, 432 F.3d at 232.  Because Davis contends that his parents' purported common-law marriage occurred in Jamaica, we apply Jamaican law to determine whether they were in fact married.  *Id.*; *see also Espichan*, 945 F.3d at 799 ("At the time [the petitioner's] parents were allegedly married, they both lived in Peru, so Peruvian law controls.").

Davis argues that his parents were married for the purposes of the Marriage Clause because Jamaica's Property (Rights of Spouses) Act 2004 ("PROSA") retroactively

---

[4]  A federal court's assessment of foreign law is "treated as a ruling on a question of law[.]" *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1873 (2018) (quoting Fed. R. Civ. P. 44.1).  We review questions of law de novo. *Cheruku v. Att'y Gen.*, 662 F.3d 198, 202 (3d Cir. 2011).

recognized common-law marriages in Jamaica, like the purported common-law marriage between his parents. Even if we accept Davis's claim that PROSA applies retroactively to relationships in the 1970s, Section 4 of PROSA states that "[t]he provisions of [PROSA apply]" in place of the common law "*to the extent that they apply to transactions between spouses in respect of property*." CAR 24 (emphasis added). This shows that, on its face, PROSA does not displace Jamaican common law beyond the division of property.

Davis also cannot rely on the definition of "spouse" to establish that common-law marriage is recognized in Jamaica. PROSA defines "spouse" as: "(a) a single woman who has cohabited with a single man as if she were in law his wife for a period of not less than five years; (b) a single man who has cohabited with a single woman as if he were in law her husband for a period of not less than five years, immediately preceding the institution of proceedings under this Act or the termination of cohabitation as the case may be." CAR 24. And the definition of "cohabitate," which is fundamental to the definition of "spouse" under PROSA, is "to live together in a conjugal relationship *outside of marriage*." CAR 23 (emphasis added). Thus, the definition of "spouse" in PROSA does not provide a reason to conclude that the drafters of PROSA intended to recognize "common-law marriages" in other contexts. Rather, the definition of "spouse" expressly indicates that cohabitating, single people have a relationship that is "outside" of

marriage.  Moreover, none of the cases interpreting PROSA that Davis cites hold that Jamaican law recognizes "common-law marriage" outside of the PROSA context.[5]

Thus, Davis has not shown that he can derive citizenship under the Marriage Clause as Davis has not shown that his parents were married under Jamaican law.  And because they were never married, they were incapable of being legally separated.

## B.    Davis's Standing to Challenge the Legitimation Clause

Davis contends that the Legitimation Clause, as applied to him, violates the Fifth Amendment's Equal Protection Clause by discriminating on the basis of gender and race. Davis argues that the proper remedy for this violation is to allow him to derive citizenship from his father under the statute.  Thus, according to Davis, he became a United States citizen on November 23, 1994, when his father naturalized.  But Davis has not shown that his alleged injury—an inability to derive citizenship from his father—is fairly traceable to the challenged action—the purported unconstitutionality of the Legitimation Clause.  Thus, Davis lacks standing to challenge the Legitimation Clause.

"Article III of the Constitution confines the federal judicial power to 'Cases' and 'Controversies.'  Under Article III, a case or controversy can exist only if a plaintiff has standing to sue[.]" *United States v. Texas*, 599 U.S. 670, 675 (2023) (collecting cases).

---

[5] *See, e.g.*, Second Opening Br. 21 (citing *Brown (Annette v. Brown (Orphiel)* [2020] JMCA Civ. 12, a Jamaican Court of Appeals case about the division of property and whether PROSA applied retroactively to that division of property); *id.* at 31 (citing *Whilby-Cunning (Thelma) v. Cunningham (Leroy Augustus)* [2011] JMSC Civ. Claim No. 2009 HCV 02358, in which the Jamaican Supreme Court discussed the retroactivity of PROSA for the purposes of the courts dividing property).

"[I]f a plaintiff does not have standing, courts 'lack authority under Article III of the Constitution to consider the merits' of any claim." *Adam v. Barone*, 41 F.4th 230, 233 (3d Cir. 2022) (quoting *In re Boy Scouts of Am.*, 35 F.4th 149, 156 (3d Cir. 2022)). Therefore, "[w]e are required to address the issue even if . . . the parties fail to raise the issue before us." *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–31 (1990)).

"To establish Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Adam*, 41 F.4th at 233–34 (quoting *Mielo v. Steak 'n Shake Ops., Inc.*, 897 F.3d 467, 478 (3d Cir. 2018)). For the second prong, traceability, Davis must show a causal connection between his inability to derive citizenship under the Legitimation Clause and the alleged unconstitutionality of the statute. *See Finkleman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). The traceability element has been described as "akin to 'but for' causation in tort[.]" *Id.* at 194 (quoting *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013)). Davis bears the burden of establishing each element, including traceability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

To derive citizenship under the Legitimation Clause, Davis must show that, among other things, his "paternity . . . [has] not been established by legitimation." 8 U.S.C. § 1432(a)(3) (repealed 2000). To answer that question, we look to the domestic-relations laws of Jamaica. *See Brandao*, 654 F.3d at 430 (deciding the legitimacy of a child born in Cape Verde based on that country's laws).

10

In Jamaica, Section 3 of the Status of Children Act, 1976 (Act No. 36/1976) abolished all material legal distinctions between legitimate and illegitimate children. *See Matter of Hines*, 24 I. & N. Dec. 544, 547 (BIA 2008). As we explained in *Brandao*, we read laws that abolish legitimacy distinctions as declaring "all natural children . . . to be the legitimate or legitimated offspring of their natural father," even if there remains a separate procedure for establishing paternity. 654 F.3d at 430 (quoting *In re Hernandez*, 19 I. & N. Dec. 14, 16 (BIA 1983)).[6] Davis's paternity is therefore established. Davis contends that Delroy is his natural father; the record supports this assertion; and no one argues otherwise.

Given this, Davis has failed to establish the traceability requirement, *i.e.*, that the purported unconstitutionality of the Legitimation Clause is the "but for" cause for his injury. For the "but for" framework, "a court must isolate and change one and only one variable. . . . [T]he variable to isolate and change is the conduct of the defendant the

---

[6] The relevant Cape Verde law states "[i]n the eyes of the law, all children are considered equal, enjoy the same rights and are subject to the same duties and obligations vis-a-vis their parents regardless of the latters' civil status." *Brandao*, 654 F.3d at 429. The Status of Children Act reads, in relevant part, "[s]ubject to subsection (4) and the provisions of sections 4 and 7, for all the purposes of the law of Jamaica the relationship between every person and his father and mother shall be determined irrespective of whether the father and mother are or have been married to each other, and all other relationships shall be determined accordingly." Status of Children Act, 1976 (Act No. 36/1976) (Jam.).

It is true that under the BIA's current approach in *Matter of Cross*, 26 I. & N. Dec. 485, 490 (BIA 2015), paternity can be established by legitimation in Jamaica "only through the affirmative act of parental marriage." But because *Matter of Cross* merely espoused the holding of *Matter of Hines*, which was decided prior to *Brandao*, we decline to treat *Matter of Cross* as intervening authority permitting us to overrule a published decision of our Court. *See Cellco P'ship v. White Deer Twp. Zoning Hearing Bd.*, 74 F.4th 96, 102 (3d Cir. 2023).

11

plaintiff challenges." *LaSpina v. SEIU Pa. State Council*, 985 F.3d 278, 286 (3d Cir. 2021). Here, changing only the conduct Davis challenges—that the Legitimation Clause permits mothers but not fathers to pass on citizenship to their unlegitimated children— there is no scenario where Davis could have derived citizenship under the Legitimation Clause because his paternity "*has* . . . been established by legitimation." 8 U.S.C. § 1432(a)(3) (repealed 2000) (emphasis added). That is, because Davis could not have derived citizenship from his mother under the Legitimation Clause, his complained-of injury—not being able to derive citizenship from his father under § 1432(a)(3)—is not fairly traceable to the purported unconstitutionality of that statutory provision. *See, e.g.*, *LaSpina*, 985 F.3d at 286–87 (finding that traceability was not met because the plaintiff would have suffered the same injury regardless of whether the defendant violated the First Amendment); *Howard v. N.J. Dep't of Civ. Serv.*, 667 F.2d 1099, 1101–02 (3d Cir. 1981) (holding that traceability was not satisfied where the plaintiffs failed a written examination required for employment but complained that another prerequisite for employment violated federal law); *Finkelman*, 810 F.3d at 198 (holding that the plaintiff's injury, an inability to buy fair-price tickets to the Super Bowl, was not fairly traceable to the NFL's actions because the plaintiff sought tickets only in the resale market). Rather, it is the result of Davis being considered legitimated as a matter of Jamaican law. Thus, Davis has not met his burden to show that he has Article III standing, and we must dismiss the Equal Protection Clause claims for lack of

jurisdiction.[7]

**IV.    CONCLUSION**

For these reasons, we will deny the petition for review to the extent Davis claims derivative citizenship based on the Marriage Clause, and will dismiss the remainder of Davis's petition for lack of jurisdiction.

---

[7] Davis's race-based claim is really a gender-based claim in disguise as Davis's focus is on the discriminatory impact against fathers.  We therefore also lack jurisdiction to consider Davis's "race-based" equal protection clause claim.